IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAILONG ZHU,<br><br>Defendant. | No. 1:23-cr-81 |

UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS
DEFENDANT'S STATEMENTS

After the defendant's March 21, 2023, arrest, a Mandarin-speaking USSS agent read the defendant his *Miranda* rights and then provided him a written *Miranda* waiver in Mandarin. The defendant orally confirmed that he understood his *Miranda* rights and confirmed that he could write in Mandarin. He then read through and signed the written waiver. Though the agent made some minor pronunciation errors in his reading of the rights, his mispronunciation did not alter the meaning of the rights or the defendant's ability to understand them, which were properly conveyed to the defendant both orally and in writing.

I.      Relevant Factual Background

Defendant Hailong Zhu is charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). On March 21, 2023, he was arrested in his home in Chicago, Illinois, and transported to a United States Secret Service (USSS) field office. Once

1

there, two officers, the lead case agent Christopher Saunders, and a Mandarin-speaking agent, Jeffrey Shi, questioned him.[1]

The agents introduced themselves and in Mandarin, SA Shi explained to the defendant, "So, I'll speak to you in Chinese first, then I'll speak English." He then explained that he was an agent with the USSS investigating white collar crime. He continued that they would explain the situation to him and continued, "Tell us the whole truth and there won't be any problems, ok?" He translated this conversation into English for the other agent present and then turned back to the defendant to explain, "In the United States, you have… How to say this? You have rights. These rights are called Miranda Rights. Before we question you, we have to read you your rights. Do you understand? Have you ever seen on TV, what do you call that, Miranda Rights?" The agent explained that he would read the rights in English and then translate them into Mandarin.

The entire translation of the *Miranda* warning, attached as Government's Exhibit 1, indicates that SA Shi spoke in both English and Mandarin, translating as he went both for the defendant and the English-speaking agent. That exhibit, and the recording of the interview, which the government will be prepared to play for the Court at the upcoming hearing, indicate that SA Shi was slow and methodical in his review of the rights.

Reproduced here is the relevant portion of the translation of the Mandarin conversation between SA Shi and the defendant wherein SA Shi explained the defendant's *Miranda* rights. SA Shi's English statements to the other agent are omitted.

---

[1] SA Shi was born in China and moved to the United States when he was four years old. In his youth, he attended Mandarin school on the weekends and communicated with his parents only in Mandarin. Although he does not feel comfortable reading and writing with Mandarin characters, he continues to use Mandarin to speak to his parents and to his wife on a daily basis. He uses his Mandarin skills in his capacity as a Secret Service Agent regularly as well.

| | |
|---|---|
| SA Shi | The translation is: Before we ask you any questions you must understand your rights. Do you understand?<br>You have the right to remain silent.<br>*Everything you say can and will be used against you in a court of law.*<br>You have the right to an attorney present during questioning.<br>If you cannot afford an attorney and want one, the court will appoint one for you.<br>If you decide now to answer our questions without a lawyer present, you have the right to stop answering questions at any time.<br>Do you understand your rights? |
| Hailong Zhu | I understand, I understand. |
| SA Shi | Good, good, good. Do you… do you want to speak with us now? My colleague will explain the situation to you. He'll explain the situation and then he'll give you the chance to speak. |
| Hailong Zhu | What? This means that… |
| SA Shi | It means that, what I mean is, do you want to speak with him? In the U.S. you have the right not to speak if you don't want to. But if you speak, this is a good opportunity. We can explain this… Ok. |
| Hailong Zhu | I can speak, but I don't understand (English)[2] |
| SA Shi[3] | I can help you with the translation. I'll translate for you, ok? Firstly, take this… Take a look. These are your Miranda Rights. This is what I just read to you. These are the things that I read to you. That's what it is, in Chinese. Do you have, that…? |
| *There is an over one-minute long pause and English conversation between the agents while the defendant reviewed the written Miranda warning.* | |
| Hailong Zhu | Ok. |
| SA Shi | This is what I just read to you. You have to fully understand it. Once you've understood it, sign here. |
| Hailong Zhu | Sign… |
| SA Shi | Correct. Sign, sign with your name. The rest doesn't matter. Good. Can you write in Chinese? Write in Chinese. |
| Hailong Zhu | Yes, I can write in Chinese. |
| SA Shi | At the bottom. Write here in Chinese. Correct. |
| Hailong Zhu | When we are in court, and I can't speak English, you can arrange… |
| SA Shi | Correct. We can. Let me say this in English as well. |
| Hailong Zhu | If I want to hire a lawyer, I can also look for one myself |
| SA Shi | Correct. Both are fine. |

---

[2] The defendant's translation critically omits "(English)" here. Testimony at the hearing will clarify that based on the context and specific wording used by the defendant, he expressed his inability to understand the English language, and was not expressing his inability to understand the *Miranda* warnings.

[3] At this time, SA Shi provided the defendant with a written *Miranda* waiver. The defendant incorrectly alleges that this was not produced in a timely manner. In fact, the government provided this to the defendant in its initial discovery production on May 4, 2023, at Bates US-00006689.

|  | Alright. Now, I'll let my colleague speak. He'll explain the situation to you, ok? |
|---|---|
| Hailong Zhu | Ok. |

### II.     The Defendant Was Read a Fully Intelligible Version of the *Miranda* Rights

The defendant's motion focuses on the statement translated here as, "everything you say can and will be used against you in a court of law." Defendant's motion alleges that SA Shi used an incorrect word for "against" that has no meaning. In fact, SA Shi used a correct word, but made a minor pronunciation error that still would have been easily intelligible to another Mandarin speaker.

In reading the rights, SA Shi used the word "buyu4," with the fourth tone, to mean "against." As the Mandarin translator will explain at the upcoming hearing, that word lacks meaning. However, the word "buyu3," said with the *third* tone, would have properly conveyed the meaning of the *Miranda* warnings. As the translator will testify, this is only a slight mispronunciation. An equivalent mispronunciation in English may be if someone said "agonst" instead of "against." While the word "agonst" has no meaning on its own, when read in the statement, "everything you say can and will be used agonst you in a court of law," the meaning of the sentence remains clear. SA Shi also mispronounced the word for testimony, but immediately corrected himself with the correct pronunciation.

The defendant argues that SA Shi should have used the word "buli2" for "against." While this may have been a correct reading, it is not the only correct—or intelligible—reading. As the Mandarin translator will testify, what SA Shi read would have conveyed the proper meaning to a native Mandarin speaker.

4

**III.    The Defendant Knowingly, Intelligently, and Voluntarily Waived his *Miranda* Rights.**

"A confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda* ... and the defendant knowingly, intelligently, and voluntar[il]y waives those rights." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017) (citation and internal quotation marks omitted). When assessing the validity of a *Miranda* waiver, the Court must evaluate "the totality of the circumstances surrounding the interrogation." *United States v. Dire*, 680 F.3d 446, 474 (4th Cir. 2012) (internal quotation marks omitted).

"Although law enforcement officers must advise defendants taken into custody of all four rights, officers need not recite the warnings according to any specific formula." *United States v. Nash*, 739 F. App'x 762, 764 (4th Cir. 2018) (citing *Florida v. Powell,* 559 U.S. 50, 60, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010)). "No precise formulation of the warnings or talismanic incantation is required to satisfy *Miranda's* strictures." *United States v. Pridgen*, No. 19-4864, 2022 WL 4758430, at *2 (4th Cir. Oct. 3, 2022), *cert. denied*, 215 L. Ed. 2d 76, 143 S. Ct. 828 (2023) (quoting *Dire* 680 F.3d at 474). The question therefore becomes whether the warnings reasonably convey the rights. *Id.*

SA Shi reasonably conveyed the defendant's *Miranda* rights. The focus of defendant's argument is on an alleged failure to convey to the defendant the right that his statements may be used against him in court. As described above, SA Shi's mispronunciation was just that, a mispronunciation that did not change the ability of a listener to understand the word. The Mandarin translator and SA Shi will testify at the upcoming hearing.

Moreover, the defendant signed a written *Miranda* waiver that he does not dispute accurately conveyed the rights. The defendant nonetheless argues that this did not cure any alleged previous deficiency in the recitation of rights. But the opportunity—which the defendant

5

took—to carefully read a correct version of the rights in fact ensures that the defendant's waiver was knowing and voluntary. The defendant was specifically asked if he could write in Chinese, and he confirmed that he could. He then took over a minute to read through the written warnings before signing them. There is nothing in the record to indicate that the defendant had any trouble reading and understanding the *Miranda* waiver before he signed it.

The recording indicates that the defendant was also comfortable asking questions to clarify anything he did not understand. He asked SA Shi if he would have an interpreter in court. He also asked whether he could hire his own lawyer. The conversation clearly indicates that the defendant understood his rights, could communicate clearly with SA Shi, and was comfortable asking SA Shi questions to clarify anything he did not understand.

The cases cited by the defendant relate to much more egregious misstatements or omissions in *Miranda* warnings than SA Shi's mispronunciation at issue here. In *United States v. Street*, 472 F.3d 1298, 1304 (11th Cir. 2006), law enforcement completely neglected to inform the defendant of the fact that anything he said can and would be used against him. In *United States v. Botello-Rosales*, 728 F.3d 865, 867 (9th Cir. 2013), when attempting to inform the defendant of his right to appointed counsel, the detective used a Spanish word for "free" that only means "at liberty to do something," thereby failing to inform the defendant that he could have counsel appointed at no cost to him. In *United States v. Espinosa*-Orlando, 704 F.2d 507, 514 (11th Cir. 1983), an entire element of the warnings was omitted when the defendant was not told of his right to appointed counsel.

In a Massachusetts state case, *Commonwealth v. Seng*, 766 N.E.2d 492, 498 (Mass. 2002), the defendant was read warnings in his native language, Khmer, that omitted three of the required warnings. For example, he was never informed of his right to remain silent—and in fact,

was read statements that suggested the opposite. *See id.* Moreover, the defendant was not informed that his statements could be used against him court, and that if he couldn't afford counsel, a lawyer would be appointed for him. *See id.* (noting that defendant only told "whatever you say, words must be truthful" not that his statements could be used against him, *id.*, and "[w]henever you don't have money to hire a lawyer, one will—it states here, they can help find one for you," *id.* at 497). The court in that case held that the fact that the defendant later signed and said he understood a written *English* version of the warnings did not cure the defect in the oral warnings—in no small part because the defendant was not a native English speaker. *See id.*

      Here, Agent Shi's reading of the warnings did not omit the required elements of Miranda. Instead, one of the warnings was mispronounced, but in a way that would nonetheless have been fully intelligible to the defendant. Moreover, the defendant told agents he could write in Chinese and then carefully read through the written *Miranda* warnings. He asked them intelligent questions about the rights demonstrating both that he was fully understanding the conversation with SA Shi, and that he felt comfortable asking clarification questions. The defendant knowingly and voluntarily waived his rights, and the motion should be denied.

## CONCLUSION

For the reasons stated above, the motion to suppress should be denied.

Respectfully submitted,

Date:   June 8, 2023

Jessica D. Aber
United States Attorney


/s/ Zoe Bedell
 Zoe Bedell
Assistant United States Attorney
United States Attorney's Office 2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Zoe.Bedell@usdoj.gov


 /s/ Georgiana MacDonald 
Georgiana MacDonald
Trial Attorney, U.S. Department of Justice
National Cryptocurrency Enforcement Team
1301 New York Ave., N.W.
Washington, D.C. 20530
Phone: (703) 299-3700
Email: Georgiana.Macdonald@usdoj.gov