FILED
IN OPEN COURT

JUN − 8 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:23-cr-81 |
| v. | <u>Count 1</u>:  18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) |
| JOSEPH WONG and HAILONG ZHU, | <u>Count 2</u>:  18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) |
| Defendants. | |

**SUPERSEDING INDICTMENT**

June 2023 Term — Alexandria

THE GRAND JURY CHARGES THAT:

At all times relevant to this Superseding Indictment:

**GENERAL ALLEGATIONS**

1.     JOSEPH WONG ("WONG") was a citizen of the United States and resided in California.

2.     HAILONG ZHU ("ZHU") was a citizen of China and resided in multiple locations in the United States, including in Illinois and California.

Business Entities

3.     Sea Dragon Trading LLC was a company registered with the California Secretary of State on or about September 8, 2022. According to records, Sea Dragon Trading was to be engaged in "general trading." ZHU was the sole registered agent for this company as well as the Chief Executive Officer.

4.      Sea Dragon Remodel Inc. was a company registered with the California Secretary of State on or about October 17, 2022.  According to records, Sea Dragon Remodel was to be involved in "remodel [sic] and distribution of construction material." ZHU was the sole registered agent for this company as well as the Chief Executive Officer.

5.      JPMorgan Chase Bank N.A. ("JPMC"); Bank of America, N.A.; M&T Bank, Lakeland Bank; and SoFi Bank, N.A. were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

### The Victims

6.      Victim 1, an individual whose identity is known to the Grand Jury, was a resident of Falls Church, Virginia, within the Eastern District of Virginia during the time of the events discussed herein.

7.      Victim 2, an individual whose identity is known to the Grand Jury, was a resident of New Jersey.

8.      Victim 3, an individual whose identity is known to the Grand Jury, was a resident of California.

### Terminology

9.      "Digital currency" or "virtual currency" is currency that exists only in digital form; it has the characteristics of traditional money, but it does not have a physical equivalent. Cryptocurrency, a type of virtual currency, is a network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies. Examples of cryptocurrency are Bitcoin (or BTC) and Ether (or ETH).

10.     The term "spoofed" refers to domain spoofing and involves a cyberattack in which fraudsters and/or hackers seek to persuade individuals that a web address or email belongs to a legitimate and generally trusted company, when in fact it links the user to a false site controlled by a cybercriminal.

11.     In so-called "pig butchering" schemes (a term derived from a foreign-language phrase used to describe these crimes), scammers encounter victims on dating services, social media websites, or even unsolicited texts or calls masquerading as a wrong number. Scammers initiate relationships with victims and slowly gain their trust, eventually introducing the idea of making a business investment using cryptocurrency. Victims are then directed to other members of the scheme running fraudulent cryptocurrency investment platforms and applications, where victims are persuaded to invest money. Once the money is sent—either through a fraudulent investment service or more traditional bank wires—the investment platform may show significant gains on the purported investment, and the victim is induced to invest or send additional money. Ultimately, the victim is unable to withdraw or recover their money, often resulting in significant losses for the victim.

## COUNT 1
### (Conspiracy to Commit Bank Fraud)

12.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 11 of this Superseding Indictment.

13.    From at least September 2022 and continuing through on or about March 21, 2023, more exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and elsewhere, the defendants, JOSEPH WONG and HAILONG ZHU, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution as defined under 18 U.S.C. § 20, by means of materially false and fraudulent pretenses, representations, and promises in violation of 18 U.S.C. § 1344(2).

### PURPOSE AND OBJECT OF THE CONSPIRACY

14.    The primary object of the conspiracy and the scheme and artifice was for the conspirators to enrich themselves by fraudulently obtaining money and property from victims, including financial institutions; transferring those proceeds to fraudulently created bank accounts; and then subsequently transferring those proceeds between multiple other bank accounts, including through fraudulent misrepresentations.

### WAYS, MANNERS, AND MEANS

15.    The ways, manners, and means by which WONG, ZHU, and their co-conspirators carried out the primary objects of the conspiracy included, but were not limited to, the following:

4

16.     The conspirators met victims through unsolicited telephone calls and online dating services.

17.     The conspirators gained the trust of victims by establishing either professional or romantic relationships with the victims. They built these relationships through interstate communications including, but not limited to, electronic messages sent via end-to-end encrypted applications.

18.     The conspirators promoted "cryptocurrency investments" to the victims after gaining the victims' trust.

19.     The conspirators established "spoofed" domains and websites that resembled legitimate cryptocurrency trading platforms.

20.     The conspirators then fraudulently induced some victims into "investing" in cryptocurrency through these fraudulent and spoofed investment platforms.

21.     The conspirators also fraudulently induced some victims into "investing" in cryptocurrency by sending funds via wire transfer.

22.     The conspirators fraudulently represented to victims through the spoofed domains that the victims' "investments" were appreciating when, in fact, the victims could no longer access their monies or obtain their return.

23.     WONG directed ZHU and other conspirators on how to register corporate entities with the California Secretary of State.

24.     ZHU and other conspirators based in the United States registered corporate entities with the California Secretary of State.

25.     WONG directed ZHU and other conspirators on how to open bank accounts with United States financial institutions.

26.   ZHU and other conspirators then opened bank accounts in the corporate entities' names with United States financial institutions.

27.   WONG directed ZHU and other conspirators on when and how to execute interstate and international wire transfers.

28.   ZHU and other conspirators' bank accounts received interstate wire transfers from victims.

29.   WONG, ZHU, and other conspirators arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers.

30.   WONG, ZHU, and coconspirators often labeled wire transfers as domestic when in truth and in fact, the wires were destined for foreign beneficiaries.

31.   WONG, ZHU, and coconspirators often sent wire transfers through various intermediary accounts before reaching their final beneficiary.

32.   WONG kept materials associated with the bank accounts that ZHU and other co-conspirators had opened. WONG also obtained online access to these bank accounts. WONG used this online access to review the bank accounts, execute wire transfers, and communicate with United States financial institutions when the accounts were restricted by the financial institutions.

33.   WONG placed voice calls to United States financial institutions and falsely represented that he was the accountholder when, in fact, ZHU or another conspirator was the accountholder. During these calls, WONG tried to obtain proceeds of the fraudulent scheme from the financial institutions that had been frozen.

34.   WONG, ZHU, and other conspirators communicated with each other and coordinated acts in furtherance of the conspiracy through an encrypted messaging service.

6

35.     WONG, ZHU, and other conspirators received monetary compensation for their role in the conspiracy.

<u>Bank Accounts</u>

36.     On or about September 9, 2022, ZHU opened an account with account number ending 3886 with JPMC in the name of Sea Dragon Trading LLC. ZHU was the sole signatory for this bank account.

37.     On or about October 20, 2022, ZHU opened an account with account number ending 9529 with Bank of America, N.A., in the name of Sea Dragon Remodel Inc. ZHU was the sole signatory on this account.

38.     On or about October 21, 2022, ZHU opened an account with account number ending 5581 with JPMC in the name of Sea Dragon Remodel Inc. ZHU was the sole signatory on this account. ZHU provided JPMC with the "Certified Articles (Certificate) of Incorporation" for Sea Dragon Remodel as identification.

<u>Victim 1</u>

39.     In or around May or June 2022, Victim 1 received an unsolicited call from a woman identifying herself as "Rachel." Shortly after this call, Victim 1 and "Rachel" began communicating on Telegram, which offers end-to-end encrypted messaging. "Rachel" claimed to live in Miami, Florida.

40.     "Rachel" led Victim 1 to believe that they were in a romantic relationship.

41.     "Rachel" began discussing cryptocurrency investments with Victim 1. In particular, "Rachel" provided a link to a fraudulent cryptocurrency investment domain named "coinasx.com" where Victim 1 was led to download an application directly from "coinasx.com"

7

to his mobile device. The downloaded platform used the name "ASX," which mimicked the Australian Securities Exchange.

42.     Victim 1 spoke with a purported customer service representative on the "coinasx.com" online chat portal, who explained to Victim 1 how to invest in "coinasx.com."

43.     "Rachel" encouraged Victim 1 to invest in "ASX."

44.     For his first investment in "ASX," Victim 1 obtained a "loan" of $15,000 from "ASX." "ASX" did not actually provide Victim 1 with funds, but his online account appeared to contain $15,000 that he could use to "invest."

45.     "Rachel" instructed Victim 1 to obtain a loan to repay his debt to "ASX." In or around September 2022, Victim 1 therefore obtained a loan for $15,000 from SoFi Bank, N.A. He used this loan to repay his debt to "ASX."

46.     Victim 1 made other investments into "ASX" by sending wire transfers. Victim 1 received directions within the Eastern District of Virginia from the purported customer service representative on how to execute these wire transfers, including the wire transfers discussed below.

47.     On or about August 12, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from M&T Bank of $1,100 to an Evolve Bank & Trust account with account number ending in 2547.

48.     On or about September 15, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $3,100 to a Community Federal Savings Bank account with account number ending in 9471.

49. On or about September 30, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from M&T Bank of $15,100 to an Evolve Bank & Trust account with account number ending in 7199.

50. On or about October 18, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $2,420 to a Choice Financial Group account with account number ending in 6584.

51. On or about November 17, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $5,000 to an Evolve Bank & Trust account with account number ending in 7248.

52. On or about November 25, 2022, within the Eastern District of Virginia, Victim 1 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $5,000, which originated in the Eastern District of Virginia and transited through Pennsylvania, from Victim 1's Bank of America account to ZHU's Sea Dragon Remodel Inc. account with account number ending 9529.

53. On or about November 25, 2022, ZHU withdrew $20,000 in cash from the Bank of America account with account number ending 9529. On or about November 29, 2022, $53,000 was wired to an account at Mitsubishi UFJ Trust and Banking with instructions that it be further wired on to at least one other account.

<u>Victim 2</u>

54. On or about September 2, 2022, Victim 2 received an unsolicited call from an individual identifying herself as "Eileen," who represented she was from the Los Angeles area. "Eileen" asked if Victim 2 was interested in speaking about cryptocurrency investments, and

"Eileen" and Victim 2 then began communicating about cryptocurrency investments on Telegram. Victim 2 believed he had a friendship with "Eileen."

55.     In September 2022, "Eileen" provided Victim 2 a link to a fraudulent cryptocurrency investment domain named "bitkancoin.com" where Victim 2 download an application directly from "bitkancoin.com" to his mobile device to create an account and begin making "investments." "Eileen" provided Victim 2 with wire instructions to make "investments."

56.     On or about September 21, 2022, Victim 2 was fraudulently induced to send a wire transfer from Lakeland Bank of $3,000 to a Choice Financial Group bank account with account number ending in 6584.

57.     On or about November 2, 2022, Victim 2 was fraudulently induced to send a wire transfer from Lakeland Bank of $20,000 to ZHU's Sea Dragon Remodel Inc. JPMC account with account number ending 5581.

58.     On or about November 3, 2022, an online wire transfer for $50,000 was initiated from JPMC account with account number ending 5581 to an account at Mitsubishi UFJ Trust and Banking bank with additional wire instructions directing that the money ultimately be transmitted to an overseas bank account with Deltec Bank. This wire transfer was labeled as a "domestic wire transfer" on the bank statement for the account ending 5581.

Victim 3

59.     On or about August 24, 2022, Victim 3 met an individual identifying himself as "Daniel" on an online dating service. Shortly after meeting, Victim 3 and "Daniel" began communicating on encrypted messaging services Telegram and WhatsApp. From in or around

10

August 2022 to in or around October 2022, "Daniel" led Victim 3 to believe that they were in a romantic relationship.

60.     In or around August 2022, "Daniel" began promoting cryptocurrency "investments" through the domain m.gammaex.net. "Daniel" instructed Victim 3 to consult the online customer service portal to begin making "investments."

61.     From in or around August 2022 to in or around October 2022, Victim 3 was fraudulently induced to send approximately $84,000 in funds through wire transfers.

62.     In or around September 26, 2022, Victim 3 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $25,000 to an Evolve Bank and Trust account with account number ending in 4931.

63.     On or about October 12, 2022, Victim 3 was fraudulently induced to send a wire transfer from Bank of America, N.A., of $31,000 to ZHU's Sea Dragon Trading LLC account with JPMC with account number ending in 3886.

64.     On or about October 17, 2022, ZHU wired $40,000 from his account with account number ending in 3886 to an account at Mitsubishi UFJ Trust and Banking with additional wire instructions directing that the money ultimately be transmitted to an overseas bank account with Deltec Bank. This wire transfer was labeled as a "domestic wire transfer" for the account ending 3886.

65.     On or about October 24, 2022, Victim 3 was fraudulently induced to send a wire transfer from Bank of America, N.A., of approximately $28,000 to a Cathay Bank account with account number ending in 0810.

(All in violation of Title 18, United States Code, Section 1349.)

11

COUNT 2
*(Conspiracy to Commit Money Laundering)*

THE GRAND JURY FURTHER CHARGES THAT:

66.     Paragraphs 1 through 11, 15 through 65 of this Superseding Indictment are hereby re-alleged and incorporated by reference.

67.     From at least September 2022 and continuing through on or about March 21, 2023, more exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and elsewhere, the defendants, JOSEPH WONG and HAILONG ZHU, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to commit a violation of Title 18, United States Code, Section 1956, namely, to conduct and attempt to conduct a financial transaction which involved the proceeds of specified unlawful activity, that is, wire fraud, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i).

PURPOSE AND OBJECT OF THE CONSPIRACY

68.     The primary object of the conspiracy was for the conspirators to enrich themselves by fraudulently obtaining money and property from victims through electronic communications, and to conceal and obscure the source of the fraudulently obtained proceeds they received by transferring the proceeds between multiple bank accounts, and ultimately outside the United States.

(All in violation of Title 18, United States Code, Section 1956(h).)

12

FORFEITURE NOTICE

THE GRAND JURY FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED
BELOW:

Pursuant to Rule 32.2(a), the defendants are hereby notified that, if convicted of the bank

fraud offense alleged in Count 1 above, he shall forfeit to the United States, pursuant to 18

U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds the person obtained

directly or indirectly, as the result of such violation.

Pursuant to Rule 32.2(a), the defendants are hereby notified that, if convicted of the

money laundering offense alleged in Count 2 above, he shall forfeit to the United States,

pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the money

laundering offense of conviction, or any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, a sum of money equal to

at least $56,000 in United States currency, representing the amount of money involved in the

violation of 18 U.S.C. § 1956(h).

(In accordance with Title 18, United States Code, Sections 982(a)(1) and 982(a)(2)(A)
and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL,

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson of the Grand Jury

Jessica D. Aber
United States Attorney

By: _____
Zoe Bedell
Assistant United States Attorney

13