IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:23-cr-81 |
| v. | Hon. Michael S. Nachmanoff |
| HAILONG ZHU, | |
| Defendant. | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE**

The defendant Hailong Zhu moves to dismiss Count 1 of the indictment for failure to allege facts constituting bank fraud and for lack of venue. As an initial matter, the government does not have to allege bank fraud, because it has charged bank fraud conspiracy. Nonetheless, the defendant's arguments fail. The Superseding Indictment's general allegations tracking the language of the statute alone suffice at this stage. Moreover, the defendant ignores the facts alleged in the indictment, including numerous allegations about acts constituting bank fraud even under the defendant's own narrow definition of the offense. The Superseding Indictment also alleges that acts constituting bank fraud occurred within the Eastern District of Virginia, even though all that is required for venue at this stage is that the government allege that acts in furtherance of the conspiracy occurred within the district. When these allegations are considered, it is clear his motion must be denied.

**I.     Factual Background**

On June 8, 2023, a grand jury in the Eastern District of Virginia returned a Superseding Indictment charging the defendant with one count of conspiracy to commit bank fraud, in

1

violation of 18 U.S.C. § 1349, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). *See* ECF No. 44. Paragraph 13 of the Superseding Indictment tracks the language of the Section 1349, while also providing additional details about dates, conspirators, and locations of the crime. Paragraph 14 then describes that the purpose of the bank fraud conspiracy "was for the conspirators to enrich themselves by fraudulently obtaining money and property from victims, including financial institutions; transferring those proceeds to fraudulently created bank accounts; and then subsequently transferring those proceeds between multiple other bank accounts, including through fraudulent misrepresentations." *Id.* ¶ 14.

The Superseding Indictment continues from there to provide additional details about the two charged conspiracies. The allegations contained in the Superseding Indictment generally track the allegations contained in the original Indictment and describe a scheme, known as "pig butchering," in which coconspirators promoted websites purporting to look like legitimate cryptocurrency trading platforms to U.S. victims. *Id.* ¶ 19. These scammers then fooled victims into "investing" in cryptocurrency through the fraudulent investment platforms, which in reality funneled victims' money to the scammers. *Id.* ¶ 20. These conspirators also directed victims to send wire transfers to bank accounts in the names of various businesses opened by yet other conspirators, including the defendant. *See, e.g., id.* ¶¶ 21, 28. Once the funds were in the possession of the defendant and similarly positioned coconspirators, they would execute in-person wire transfers and withdrawals to transfer the funds to other individuals, including to individuals ultimately located overseas. *Id.* ¶ 29.

The Superseding Indictment also added factual allegations.[1] For example, the Superseding Indictment alleges that in at least one instance, the defendant provided a bank with the Certified Articles of Incorporation for his fraudulently created business when he opened his fraudulent bank accounts. *Id.* ¶ 38. Additionally, in describing how the defendant and his coconspirators arranged for the transfer of fraudulently obtained proceeds via interstate and international wire transfers, the Superseding Indictment explained that the defendant and his coconspirators would often mislabel wires as domestic when they were actually transferring money overseas. *Id.* ¶¶ 29-30. The Superseding Indictment provided two specific examples of wires that were incorrectly labeled in this way. *See id.* ¶¶ 58, 64.

The Superseding Indictment also provided additional details relating to the scam perpetrated on Victim 1. Specifically, the Superseding Indictment describes how, for his first supposed investment in ASX, Victim 1 obtained a "loan" of $15,000 from ASX. *Id.* ¶ 45. While Victim 1 did not actually receive funds, his online account appeared to contain $15,000 that he could use to "invest." *Id.* Victim 1 then had to repay his "debt" to ASX, so one of the coconspirators instructed Victim 1 to obtain an actual loan from a bank. As a result, on or around September 2022, Victim 1 obtained a loan for $15,000 from SoFi Bank. *Id.* ¶ 45. Following the scammers' instructions, he then sent this money to the scammers from the Eastern District of Virginia to repay his "debt." *Id.* ¶¶ 45-46, 49.

---

[1] This memorandum does not purport to cover all the differences between the original and Superseding Indictments, but instead highlights changes of particular relevance to this motion.

## II.     The Superseding Indictment Sufficiently Alleges Bank Fraud Conspiracy.

### a. Legal Standard.

"[A]n indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment 'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence.'" *United States v. Rendelman*, 641 F.3d 36, 43-44 (4th Cir. 2011) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Specifically, "an indictment is legally sufficient (1) if it alleges the essential elements of the offense . . . and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *Id.* at 44. Thus, while the indictment must include the "essential facts constituting the charged offense," that standard simply requires that an indictment contain enough information so that the defendant can raise a double jeopardy claim at a later date. *United States v. Rendelman*, 641 F.3d 36, 43 (4th Cir. 2011).

The government has no obligation to allege facts beyond this bare minimum. Thus, the Fourth Circuit has found indictments sufficient when they do no more than "track[] the language of the statute." *United States v. Amend*, 791 F.2d 1120, 1125 (4th Cir. 1986); *see also, e.g., United States v. American Waste Fibers Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir. 1987) (noting that in *Amend*, the Fourth Circuit had upheld an indictment "that neither specified the acts that violated the cited statutes nor identified any of the five other persons whom defendant, to be guilty of a Continuing Criminal Enterprise, was required to manage, organize, or supervise"); *United States v. Goff*, 517 F. App'x 120, 124 (4th Cir. 2013) (rejecting motion to dismiss indictment even though it "fails to include much detail"). As long as the defendant is able to generally identify the conduct at issue, then the allegations in an indictment are sufficient.

4

Moreover, the inquiry at this stage is a purely legal one: "A court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). A pretrial motion is only appropriate if it raises issues "that the court can determine *without a trial on the merits.*" Fed. R. Crim. Pro. 12(b)(1) (emphasis added); *see also United States v. Shabbir*, 64 F. Supp. 2d 479, 481 (D. Md. 1999) (a motion to dismiss "cannot be used as a summary judgment mechanism, nor can the court grant [the defendant's] motion if his legal contentions are inextricably bound up with the facts of the case"); *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) ("[T]he Supreme Court has instructed that Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.' If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." (quoting *United States v. Covington*, 359 U.S. 57, 60 (1969) (other citations omitted)).

      b.  **The Superseding Indictment's General Allegations Sufficiently Allege Bank Fraud Conspiracy.**

As an initial matter, the Superseding Indictment would be sufficient even if it alleged no facts constituting bank fraud. That is because the defendant is charged with conspiracy to commit bank fraud—not bank fraud itself. "Proof of a conspiracy does not require proof that the object of the conspiracy was achieved or could have been achieved, only that the parties agreed to achieve it." *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). In short, the government neither has to allege or prove that anyone actually committed bank fraud—only that they wanted to. Thus, even if the Superseding Indictment alleged no acts constituting bank fraud, the defendant's motion would need to be dismissed.

5

Moreover, Count 1 of the Superseding Indictment contains sufficient allegations regarding bank fraud conspiracy to easily clear the low bar applicable at this stage. To begin, paragraph 13 of the Superseding Indictment tracks the language of Section 1349, identifies the object of the conspiracy as bank fraud in violation of Section 1344(2), identifies the dates of the relevant conduct, states that the actions took place in the Eastern District of Virginia and elsewhere, and even identifies one of the other coconspirators by name. The defendant does not claim that any element of the offense is missing. Paragraph 14 provides even more detail by generally describing the conduct at issue and alleging that the coconspirators sought to enrich themselves by (1) committing fraud in the process of obtaining money and property from victims and financial institutions; (2) transferring those proceeds to fraudulently created bank accounts; and (3) subsequently transferring those proceeds between multiple other bank accounts, including through fraudulent misrepresentations. These two paragraphs alone more than satisfy the government's obligations at the indictment stage. *See, e.g., United States v. Engle*, 676 F.3d 405, 415-16 (4th Cir. 2012) (holding that the bare allegation that the acts were committed "in the Eastern District of Virginia and elsewhere" was a sufficiently detailed and specific allegation to survive a pretrial motion to dismiss). The motion can be denied based on these paragraphs alone.

c. **The Superseding Indictment's Allegations Regarding Fraudulently Inducing Victims to Send Money Sufficiently Allege Bank Fraud.**

Despite the allegations in paragraphs 13 and 14, and despite the fact that the government does not have to allege actual bank fraud, the defendant nonetheless complains that the numerous allegations set forth in the rest of the Superseding Indictment are insufficient to establish bank fraud and thus bank fraud conspiracy. But the allegations are sufficient to establish bank fraud conspiracy; moreover, while the government disagrees with the defendant's legal conception of bank fraud, the allegations are sufficient to establish bank fraud *even under the defendant's own*

*legal theories*.[2] In each of the categories of potential bank fraud that the defendant identifies, the government has made specific allegations that satisfy the legal standards he cites.

First, the defendant argues that false statements to a victim who then transfers his own money from a bank do not constitute bank fraud. This is an incorrect characterization of the law. As the defendant agrees, bank fraud requires "a scheme to obtain bank-controlled money or property '*through*' the misrepresentation, 'such that the connection between the two is something more than oblique, indirect, and incidental.'" ECF No. 53 at 5 (quoting *Loughrin v. United States*, 573 U.S. 351, 163 (2014)); *see also, e.g., United States v. Adepoju*, 756 F.3d 250, 255 (4th Cir. 2014) ("A § 1344(2) conviction does not demand that the bank be the intended victim of the fraud; a person can violate the statute by obtaining funds from a bank while intending to defraud another person or entity."). Here, the coconspirators' misrepresentations to the victims that they were making legitimate investments in cryptocurrency were the *direct cause* of the coconspirators obtaining money in the custody of a bank. Moreover, this is not a fraud where the scammer was indifferent to the means of payment, and it would not matter if the victim paid for the fraudulent goods by check, cash, wire, or money found in the couch cushions. Instead, the coconspirators in this case established an elaborate scheme specifically intended to facilitate wire transfers from banks, including providing victims with specific directions on how to effectuate these transactions. The coconspirators established companies and bank accounts whose *sole purpose* was receiving money fraudulently obtained from another bank. As the Supreme Court recognized, "what relationships count as close enough to satisfy the phrase 'by means of' will

---

[2] The defendant repeatedly misconstrues the law governing the scope of what constitutes bank fraud, and the government does not agree with his legal characterizations. However, those issues need not be decided here because the allegations are sufficient even under the defendant's proposed standards. While the government therefore does not address all of its disagreements with the defendant's characterization of the law, it preserves these objections.

depend almost entirely on context." And here, the direct relationship between the misrepresentations and the transfers and the centrality of the bank transfers to the scheme means the test is satisfied.

But the result is the same even accepting the defendant's view of the law. The defendant, citing Supreme Court case law, acknowledges that Section 1344(2) is satisfied by "frauds in which a false statement will naturally reach such a bank (*or a custodian of the bank's property*)." ECF No. 53 at 7 (quoting *Loughrin*, 573 U.S. at 365 n.8) (emphasis added); *see also Loughrin*, 573 U.S. at 363 ("Section 1344(2)'s 'by means of' language is satisfied when, as here, the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control."). Here, the Superseding Indictment details how Victim 1 was fraudulently induced to obtain a loan from a federally insured bank and then further fraudulently induced to send that money to the scammers. ECF No. 44, ¶¶ 44-45. In other words, the Superseding Indictment alleges that the coconspirators made false statements directly to the custodian of the bank's property (Victim 1) in order to obtain that property. This allegation constitutes bank fraud.

### d. The Superseding Indictment's Allegations Regarding False Statements in Opening Bank Accounts Sufficiently Allege Bank Fraud.

Second, the defendant argues that false statements made in opening a bank account do not constitute bank fraud. As an initial matter, the Superseding Indictment sufficiently alleges that the coconspirators made false statements in the opening of the accounts. For example, the Superseding Indictment alleges that on at least one occasion, the defendant provided an entity's articles of incorporation to a bank as identification in opening the account, ECF No. 44 ¶ 38, and alleges that this company was formed with the false purpose of "remodel [sic] and distribution of

construction material," *id.* ¶ 4. Additionally, as discussed, the indictment alleges that the coconspirators transferred proceeds "to fraudulently created bank accounts." *Id.* ¶ 14.

Moreover, such false statements at account opening can constitute bank fraud—though whether they do is a question of fact not appropriately resolved at this stage. As the defendant himself acknowledges, the Fourth Circuit's decision in *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991), was that the particular misrepresentation at issue in that case "was not material to the alleged fraud." ECF No. 53 at 9. The *Orr* court itself notes that its decision was based on a "matter of fact," not law. *Orr*, 932 F.2d at 332.[3] Similarly, the Seventh Circuit in *United States v. Davis*, 989 F.2d 244 (7th Cir. 1993), stated that—*after a full trial*—the government had "failed to prove that [the defendant's] misrepresentation [in opening the account] was material." *Id.* at 247.[4] This question of whether a particular misrepresentation is material is a fact-based inquiry that is inappropriate at this stage. *See Engle*, 676 F.3d at 415; *see also, e.g., Washington v. Recuenco,* 548 U.S. 212, 219 (2006) ("We further determined that materiality is an element of the mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes as well."); *United States v. Garcia-Ochoa*, 607 F.3d 371, 376 (4th Cir. 2010) ("Materiality, as an element of a criminal offense, is a question of fact (or at the very least, a mixed question of law and fact) to be resolved by the fact finder….").

---

[3] *See also United States v. Brandon*, 298 F.3d 307, 313 (4th Cir. 2002) ("We view *Orr* as establishing merely that a routine bad check case does not come within the scope of § 1344 where the defendant passes to a merchant a check from an account for which the defendant is an authorized signatory and the drawee bank refuses to honor the check for lack of sufficient funds.")

[4] The Seventh Circuit also found that the government had failed to establish bank fraud because it had not established that the defendant had not schemed to defraud a bank of any money. *Davis*, 989 F.2d at 246. But this holding ignores § 1344(2)'s provision covering funds in the custody of a bank; moreover, § 1344(2) does not require proof of a risk of loss to the bank. *United States v. Adepoju*, 756 F.3d 250, 255 n.3 (4th Cir. 2014).

9

Moreover, in other instances, after considering the full evidence at trial, courts have concluded that misrepresentations like the ones at issue here regarding the nature of a business can constitute bank fraud, particularly when viewed in the context of a larger scheme. For example, in *United States v. Lebedev*, 932 F.3d 40 (2d. Cir. 2019) (abrogated on other grounds by *Ciminelli v. United States*, 143 S.Ct. 1121 (2023)), the Second Circuit affirmed a bank fraud conviction because at trial, the government had presented evidence to "establish the significance of [the company's] misrepresentations about the nature of its business." *Id.* at 48. For example, "there was sufficient evidence showing that [the defendant] caused false information to be sent to financial institutions to disguise the fact that their customers were transacting business" with a company that was "both unlawful and carried a higher risk of fraudulent transactions." *Id.* at 48-49. Similarly, at trial in this case, the government would have the opportunity to expand on the allegations in the indictment regarding false statements made across the openings, operations, and closings of the various bank accounts, as well as about the effect and materiality of these statements. Such evidence is relevant to assessing the scheme to defraud, materiality, and intent to defraud, and the need to fully consider such evidence renders a motion to dismiss inappropriate at this stage.

      **e. The Superseding Indictment's Allegations Regarding False Statements in Conducting Wire Transfers Sufficiently Allege Bank Fraud.**

Third, the defendant argues that instructions to execute wire transfers alone cannot establish bank fraud because such instructions are not factual representations. But while the Superseding Indictment does allege that the coconspirators directed wire transfers, it does not stop there. Instead, it also alleges that they falsely labeled these transactions as domestic transfers

when they were in fact international transfers. *See* ECF No. 44, ¶ 29. This labelling is precisely the sort of false representation of fact that indisputably constitutes bank fraud.[5]

The case the defendant cites supports this conclusion. In *United States v. Briggs*, 939 F.2d 222 (5th Cir. 1991), the Fifth Circuit found the facts supporting the defendant's plea insufficient because they alleged that the defendant ordered wire transfers, but "[p]recisely how [the defendant] effected these transfers is unclear." *Id.* at 224. The court specifically noted that they were not holding "that the ordering of a wire transfer can never involve misrepresentation, only that the act *itself* does not constitute misrepresentation. For example, our precedent makes clear that § 1344(a)(2) would encompass a wire transfer order containing an *actual* misrepresentation (e.g., a false recitation of the authority for its issuance)." *Id.* at 227. Here, the Superseding Indictment does allege *how* the defendant's effectuated the transfers—through wire transfer instructions containing false statements about the wires' ultimate destinations. These allegations are sufficient to allege bank fraud.

The defendant also argues that because the defendant and Wong are coconspirators, Wong's statements misrepresenting himself as the defendant are authorized, and therefore not bank fraud. ECF No. 53 at 12. But this argument also fails. The question in determining whether fraud occurred is not whether Wong's statements were authorized; it is whether Wong's statements were false.[6] Wong did not call the bank and say that he had been authorized by the

---

[5] In a footnote, the defendant appears to try to explain this allegation about domestic vs. international wires as a "consequence of the steps required to transfer money overseas." ECF No. 53 at 11 n.2. But the cited sources say nothing about the mislabeling. In any event, to the extent that the defendant is trying to suggest that the representations the defendant and his coconspirators made to the banks are *not* actually false, that is both incorrect and a factual argument that cannot prevail at this stage.

[6] This inquiry makes sense. The idea that coconspirators' agreement to commit fraud somehow renders their cumulative behavior not fraudulent is absurd.

11

defendant to make the call or to obtain the money in the bank's custody; he called the bank and told them that he *was the defendant*. Because Wong is not, in fact, the defendant, the statements are unquestionably false—as required to constitute bank fraud. To the extent the defendant suggests this misrepresentation is not material, this is, again, a question for the jury that may not be resolved at the motion to dismiss stage. This allegation is sufficient to support the indictment.

### III. To Support Venue in This District, the Government Need Only Allege That an Overt Act in Furtherance of the Conspiracy Occurred Here.

As discussed in detail in the government's opposition to the defendant's previous motion to dismiss on venue grounds, *see* ECF No. 36, and incorporated here by reference, venue for a conspiracy charge is proper wherever a co-conspirator's overt acts occurred, even where, as here, "there is no evidence that the defendant had ever entered that district or that the conspiracy was formed there." *United States v. Mitchell*, 70 F. App'x 707, 711 (4th Cir. 2003) (unpublished). "[P]roof of acts by one co-conspirator can be attributed to all members of the conspiracy." *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) (quoting *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995)). Nor do the overt acts of co-conspirators need to be reasonably foreseeable to the defendant. *United States v. Johnson*, 510 F.3d 521, 527 (4th Cir. 2007).

In addition to the facts alleged and previously discussed in the original indictment, the Superseding Indictment details how Victim 1 was fraudulently induced to obtain a loan from a federally insured bank in the Eastern District of Virginia and then further fraudulently induced to send that money to the scammers. ECF No. 44, ¶¶ 44-45. These acts clearly constitute acts of bank fraud and are thus acts in furtherance of the bank fraud conspiracy within the district. For these reasons, and those discussed in the government's previous brief in opposition, the defendant's motion should be denied.

The government also hereby incorporates its response to the defendant's motion to transfer venue. *See* ECF No. 37. The fundamental facts still have not changed: the case has absolutely no tie to Illinois, and venue is proper, appropriate, and convenient in the Eastern District of Virginia in light of the numerous overt acts in the district, the concentration of documents in this district, and the location of many key witnesses in this district, in addition to the other factors discussed in that opposition.

## CONCLUSION

The Superseding Indictment sufficiently alleges facts establishing bank fraud conspiracy, bank fraud, and venue in the Eastern District of Virginia. The defendant's motion should therefore be denied.

Respectfully submitted,

Date: June 30, 2023

Jessica D. Aber
United States Attorney

/s/ Zoe Bedell
 Zoe Bedell
Assistant United States Attorney
United States Attorney's Office 2100
Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Zoe.Bedell@usdoj.gov

 /s/ Georgiana MacDonald
Georgiana MacDonald
Trial Attorney, U.S. Department of Justice
National Cryptocurrency Enforcement Team
1331 F Street, N.W.
Washington, D.C. 20004
Email: Georgiana.Macdonald@usdoj.gov