IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 1:23-cr-81 |
| v. ) | |
| ) | Honorable Michael S. Nachmanoff |
| ) | |
| HAILONG ZHU, ) | |
| ) | |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM REGARDING DISPUTED INSTRUCTIONS**

**I. The Court Should Instruct the Jury that a Conspiracy is Defined as An Agreement "To Commit the Same Offense" As Provided in Defense Instructions A and B.**

The government objects that the "defendant's use of 'offense' [instead of "objective"] mischaracterizes and misquotes conspiracy precedent." Gov't Obj. (ECF 77) at 2. But the government's own authorities recognize that to establish a conspiracy, "the conspirators must have agreed to commit *the same offense*." *United States v. Stavroulakis*, 952 F.2d 686, 690–91 (2d Cir. 1992) (emphasis added); *cf.* Gov't Obj. Def. Disputed Instructions, ECF 77, at 2-3 (quoting *Stavroulakis*). Supreme Court precedent cited by both parties does so too. *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense"); *accord Ingram v. United States*, 360 U.S. 672, 678 (1959) (conspiracy requires proof of agreement to commit a "particular substantive offense").

Accordingly, defendants who do not agree to commit the "same crimes" are not

conspirators with each other. *United States v. Pinson*, 860 F.3d 152, 161-62 (4th Cir. 2017). More specifically with respect to this case, a money launderer who does not know of and specifically agree to further the particular fraud that generated criminal proceeds has not conspired to commit that fraud. *United States v. Rosenblatt*, 554 F.2d 36, 37-38 (2d Cir. 1977).

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992), cited by the government, illustrates how this principle works in the context of a charge of conspiracy to commit money laundering. Money laundering prohibits engaging in financial transactions with criminal proceeds, but does not require the launderer to know precisely which crime generated the proceeds. Consequently, two people can conspire to commit money laundering even "when one of the conspirators believes the cash stems from narcotics transactions while the other believes the money came from illegal gambling[.]" *Id.* at 690. In this context, both have agreed to commit the object offense, money laundering, even if they do not agree on the source of the criminal proceeds. On the other hand, if both were charged with conspiring to commit the antecedent criminal conduct that generated the proceeds (say, bank fraud), "there could have been no meeting of the minds between the conspirators." *Id.* (citing *Rosenblatt*, 554 F.2d at 40-42).

The government insists that conspirators need only agree to pursue the same criminal "objective," not the same criminal offense. Gov't Obj. (ECF 77) at 2 (citing *Salinas*, 522 U.S. at 63-64). If the government means that conspirators do not have to agree to commit the same substantive criminal offense, it is wrong. In context, this

statement from *Salinas* regarding the "same criminal objective" refers to the "substantive offense" that is the object of the charged conspiracy. 522 U.S. at 63-65 ("A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense . … [But] [a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense").

The government's refusal to agree on this elemental point is likely due to its expressed intention to introduce significant amounts of evidence related to uncharged wire fraud and the dismissed money laundering conduct. Where the law is so clear that conspirators must agree to pursue the same "offense," the only purpose in using the word "objective" would be to increase the category of potential conspirators beyond what the law allows. But that is precisely why the Court should instruct the jury that "the focus of [18 U.S.C. § 1349] – the object of the charged conspiracy – is the offense that the conspirators allegedly conspired to commit." Defendant's Proposed Instruction A (citing *United States v. Elbaz*, 52 F.4th 593, 604 (4th Cir. 2022). Under the circumstances of this case, the Court must ensure that the jury remains focused on the *charged* object of the offense charged, and not uncharged offenses.

The fact that the Fourth Circuit made this observation in the context of an inquiry into the extraterritoriality of the statute makes no difference. The statement that the focus of § 1349 is on the object of the charged conspiracy is based on the Fourth Circuit's analysis of the "text and structure" of § 1349. 52 F.4th at 603. Indeed,

3

the citations supporting the statements from *Elbaz* are simply § 1349's statutory text, the Black's Law Dictionary definition of "object," and the sixth edition of LaFave's Treatise on Substantive Criminal Law discussing basic principles of conspiracy law. *Id.* at 604 (LaFave, in turn, cites a British jury instruction in *R. v Murphy and Douglas*, 173 E.R. 502 (1837) which defined a conspiracy as requiring proof of two persons "pursuing the same object"). In sum, instructing the jury that § 1349 focuses on the charged object would reflect an indisputable element of the law of conspiracy, and will help to avoid jury confusion if the Court admits evidence of uncharged wire fraud and money laundering conduct.

## II. Instructions on Elements of the Object of the Conspiracy

- **Obtaining Money or Property**

The government argues that the Court need not define the elements "obtain" or "money or property" because the meaning is obvious and the government is not pursuing a theory of guilt based on deprivation of information. Neither of these arguments support leaving these words undefined for the jury.

The word "obtain" means to "gain" or "acquire" money or property in the context of the fraud statutes. The Supreme Court has consistently held that the federal fraud statutes "protec[t] property rights only," *Ciminelli v. United States*, 143 S. Ct. 1121, 1126 (2023) (citation omitted), and has alternately referred to the "obtain" element in terms of either "depriving" the victim of money or property, or "obtaining" money or property. *Compare Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) ("The wire fraud statute thus prohibits only deceptive 'schemes to deprive [the victim of]

4

money or property'"), *with id.* at 1572 ("fraudulent schemes violate that law only when, again, they are 'for obtaining money or property'") (quoting 18 U.S.C. § 1343)).

Nonetheless, if these words are left undefined, the jury could wrongly assume that the word "obtain" encompasses withdrawing money from one's own account. If a person withdraws $10 from their own account (that has sufficient funds to cover the withdrawal), that person has not "gained" $10 – but a jury could wrongly conclude, in the absence of the Court defining the term, that such a withdrawal establishes that the person has "obtained" $10 from the bank.

Likewise, the jury should be instructed that depriving information from a bank does not deprive it of a property interest for purposes of the fraud statutes, because a central claim in this case is that Mr. Zhu conspired to commit bank fraud by giving false information to banks in California to open accounts and transfer money. Neither action, in our view, resulted in conspirators gaining bank property, or alternatively depriving banks of money or property. The defense should be permitted to make this argument to the jury with the assistance of instructions on the meaning of these elements.

The risk from omitting these instructions is that the jury will be confused as to the law. The risk of adding these instructions is simply defining elements that may not be important in the case. Accordingly, the Court should provide Defendant's Proposed Instruction C to the jury.

- **By Means Of**

The government argues that the Court should not define this "significant

*textual* limitation on § 1344(2)'s reach," *Loughrin v. United States*, 573 U.S. 351, 362 (2014) (emphasis in orig.), because there are some fact patterns that present highly contextual questions about whether bank property was obtained "by means of" a false statement. The existence of such cases, however, does not mean that the Court should not define the clear bright line rule as to the meaning of this element.

The bank fraud statute has never encompassed schemes "where money is merely withdrawn legally from a federally insured bank by a victim and where the bank itself is in no way victimized." *United States v. Blackmon*, 839 F.2d 900, 904 (2d Cir. 1988). In *Loughrin v. United States*, 573 U.S. 351, 365 & n.8 (2014), the Court reaffirmed this bright line rule that the bank fraud statute "draw[s] a line at fraud … in which a false statement will naturally reach [] a bank (or a custodian of the bank's property." Accordingly, inducing an ordinary bank customer to withdraw their money from a bank or write a check to a fraudster does not constitute a bank fraud scheme. *Id.* at 364-65.

The government's belief that this case does not fall into the category of cases encompassed by this bright line rule does not mean the jury should not be instructed on the existence of this rule. This is particularly so given facts (which the government acknowledged at the motion hearing) that no false statement from alleged co-conspirators played any role in the bank providing the personal loans at issue.[1]

---

[1] As the government explained at the hearing, "Victim 1 took out a loan from the bank, and we're not contending here that that would necessarily be the bank fraud, but then in response to the misrepresentations [to Victim 1], when Victim 1 transferred the bank's property to the scammers, that is bank fraud." July 12, 2023 Tr. at 24, *United States v. Zhu*, Case No. 1:23-cr-81. The government thus argues that

6

**III. Instruction Defining "Custodian of Bank Property"**

In negotiating over these instructions, the government emphasized that "a false statement could be made to a custodian of the bank's property, so just saying [a false statement is material if it is capable of influencing] 'a bank's decisions' is not accurate." The defense accepted the government's point, both because *Loughrin* notes that bank fraud schemes can encompass efforts to take bank property from bank property custodians, and because the government argued at the motion to dismiss stage that a bank customer who obtains a personal bank loan is a "custodian" of bank property. As a result of this discussion, however, the defense proposed defining the meaning of a "custodian of bank property" because a "custodian" is a legal term of art.

Now the government claims that such a definition is "unnecessary and inappropriate because that phrase appears nowhere in the bank fraud statute and is irrelevant to the legal analysis." Gov't Obj. (ECF 77) at 5. At the same time, the government agrees that an "instruction defining property owned by a bank" would be appropriate. *Id.* at 7.

The proposed legal definitions of a "custodian" and defining the debtor-creditor relationship between a bank and its customer do just that. They explain as a matter of law whether loan proceeds obtained by a bank customer constitute bank property,

---

bank fraud includes fraud whereby an ordinary bank customer is induced to turn over money they obtain "legally from a federally insured bank," *Blackmon*, 839 F.2d at 904, without any false statements ever reaching the bank. Under this view of the statute, a college student who asks their parent to take out a $500 cash advance on a credit card (issued by an FDIC-insured bank) to give them for school supplies and tuition, but the money is actually intended to fund a trip for Spring Break, would violate the statute.

7

and define what it means to hold bank property as a custodian of that property.

However, if the government is abandoning its theory of guilt that a bank customer who obtains a personal loan, or an advance on a credit card, is a "custodian" of bank property, there is no need to explain these concepts to the jury. On the other hand, if it continues to assert that a person who obtains a personal loan from a bank is a "custodian" of bank property, the Court should instruct the jury as to the legal meaning of a "custodian," and the debtor-creditor relationship established by a personal bank loan. Again, the risk from including such an instruction is negligible compared to the risk from omitting the definitions of these basic legal concepts.

**IV. Instruction on the Meaning of Beyond a Reasonable Doubt**

Fourth Circuit decisions that discourage trial courts from defining reasonable doubt do so on the grounds that courts will inadvertently weaken the standard. But the government makes no argument that the language adapted in the First Circuit and proposed here fails to meet the constitutional standard.

A criminal defendant is constitutionally entitled to a jury determination as to every element of the crime charged beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). And as the Fourth Circuit has noted, "[w]ithout instructions as to the law, the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on those facts." *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995).

If there is a concern that the Court's instruction might lower the requisite standard of proof, there should be an even greater concern that a jury – left without

8

any instruction on the meaning of the reasonable doubt standard – may fail to apply the heavy standard of proof required for conviction in a criminal case. As such, the Court should exercise its discretion to help the jury to understanding the meaning of this legal standard, and accept the "responsibility of declaring the law." *Sparf v. United States*, 156 U.S. 51, 102–03 (1895).

Respectfully submitted,

Hailong Zhu,

By: /s/ Geremy Kamens
Federal Public Defender
Va. Bar No. 41596
Nate Wenstrup
Assistant Federal Public Defender
Va. Bar No. 96324
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
Phone: (703) 600-0848
Fax: (703) 600-0880
Email: geremy_kamens@fd.org

Angus Fei Ni
AFN Law PLLC
Admitted *Pro Hac Vice*
504 2d Ave., 14th Floor
Seattle, Washington
Phone: (773) 543-3223
Email: angus@afnlegal.com