IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 1:23-cr-81 |
| v. | ) | |
| | ) | Honorable Michael S. Nachmanoff |
| | ) | |
| HAILONG ZHU, | ) | |
| | ) | |
| Defendant. | | |

FILED
IN OPEN COURT

SEP - 7 2023

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## HAILONG ZHU'S MOTION FOR JUDGMENT OF ACQUITTAL

Hailong Zhu, by counsel, hereby moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The evidence presented by the government is insufficient to establish not only the elements of conspiracy to commit bank fraud in this District, but also Mr. Zhu's knowing agreement to participate in such a conspiracy. Reasonable doubt therefore exists as a matter of law, and the Court should grant a judgment of acquittal.

### Introduction

The facts of this case are straightforward. Joseph Wong and others defrauded victims into sending them money under the guise of collecting investments in cryptocurrency. To avoid getting caught for stealing the victims' money, the people who engaged in the fraud didn't want the victims to send money that could be traced to themselves. So, they convinced people like Mr. Zhu to open bank accounts through which the scammers could funnel their fraud proceeds obtained from the victims.

None of this constitutes a conspiracy to commit bank fraud because a fraud scheme to induce an ordinary person to hand over their money is not bank fraud. *Loughrin v. United States*, 573 U.S. 351, 361-62 (2014) (inducing a victim to withdraw funds from the victim's bank account (i.e., money "under the custody or control" of the bank) through fraudulent misrepresentations to a victim does not constitute bank fraud); *United States v. Martin-Alfaro*, 567 F. Supp. 3d 347, 354 (D.P.R. 2021) (dismissing bank fraud charges based on false statements made to bank account holders). In other words, the fact that "[m]oney is taken from banks every day for countless foolish purposes" does not mean fraudsters who induced victims to make such withdrawals committed bank fraud. *United States v. Thomas*, 315 F.3d 190, 199 (3d Cir. 2002), *abrogated in part on other grounds by Loughrin*, 573 U.S. 351.

Nor does it constitute a bank fraud conspiracy to open a bank account with false information or for an account holder to direct a bank to wire money domestically when the account holder's intent is to wire the money internationally. Such conduct merely deprives a bank of accurate information, not money or property. *See Ciminelli v. United States*, 143 S. Ct. 1121, 1127 (2023) ("The right-to-control theory cannot be squared with the text of the federal fraud statutes, which are "limited in scope to the protection of property rights."); *United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021) ("There is no cognizable property interest in 'the ethereal right to accurate information.' ... Rather, 'the scheme must be one to deceive the bank and deprive it of something of value.'"); *United States v. Puerta*, 607 F. App'x 635, 636 (9th Cir. 2015) (holding that defendants "use of two names" and "his submission of a Domestic Money

Transfer Recall form indicating an alleged false reason for recalling a previous wire transfer" failed to satisfy *Loughrin*'s "relational" requirement "between the alleged false statements or representations and the obtaining of bank property"); *United States v. Braeger*, 2023 WL 2136722, at *7 (E.D. Wis. Feb. 21, 2023) (dismissing bank fraud charge based on opening account with false information).

Furthermore, there is no evidence that Mr. Zhu agreed to participate in, much less knew about, the cryptocurrency fraud scheme or the charged bank fraud conspiracy. To be found guilty of the overarching conspiracy alleged in the Indictment, the government must prove Mr. Zhu agreed to the same criminal object as his co-conspirators. But no evidence exists that he agreed to the "criminal objective" of obtaining money by inducing people to take out bank loans -- a basic requirement to convict him of bank fraud conspiracy under the theory of guilt in the indictment. See *Salinas v. United States*, 522 U.S. 52, 63 (1997) ("[t]he partners in the criminal plan must agree to pursue the same criminal objective ...."); *United States v. Pinson*, 860 F.3d 152, 162 (4th Cir. 2017) (vacating RICO conspiracy conviction because the evidence established several criminal ventures rather than a single overarching conspiracy, and "the cast of characters" did not have "the same criminal objective."); *United States v. Johnson*, 149 F. Supp. 3d 678, 685 (E.D. Va. 2016) (finding defendant was not guilty of conspiracy to commit wire fraud where the evidence established that, although he knew what others in the group planned to do with stolen credit cards, he only was part of the group for the purpose of stealing currency); *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) (vacating

conviction because "[t]he law of conspiracy requires agreement as to the 'object' of the conspiracy[,]" and defendant laundered money without knowledge of how unlawful proceeds were obtained by alleged co-conspirator).

And finally, even if the Court were to find sufficient evidence exists by which a rational jury could conclude that Mr. Zhu agreed to participate in a bank fraud conspiracy, no evidence supports a finding that the agreement itself or overt acts in furtherance of that agreement occurred in the Eastern District of Virginia.

## I. LEGAL STANDARD

At the conclusion of the government's case in chief, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A Rule 29 motion tests whether the government has met its burden to present evidence that, with all conflicting inferences resolved in favor of the prosecution, would allow a rational jury to "reach a subjective state of near certitude of the guilt of the accused." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Sufficiency is measured by whether a rational jury could find the defendant guilty beyond a reasonable doubt "of every fact necessary to constitute the crime[s] with which he is charged." *Id.* at 315, 319 (1979); *see also McDaniel v. Brown*, 558 U.S. 120, 131 n.4 (2010).

"While all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994). Likewise, "[f]avoring the prosecution with all inferences does not mean that [the Court] must ignore evidence that is in the record" that is inconsistent with guilt. *Id.*

at 910 n.29. If all of the evidence taken together would not permit a rational jury to have certainty as to the defendant's guilt as to any essential element, the motion must be granted.

Moreover, a mere preponderance of evidence supporting a finding of guilt — evidence that only makes it more likely than not that the defendant is guilty — is not sufficient to survive a Rule 29 motion for judgment of acquittal. *In re Winship*, 397 U.S. 358, 365 (1970); *Cty. Ct. of Ulster Cty., N. Y. v. Allen*, 442 U.S. 140, 166 (1979) (noting that beyond a reasonable doubt is a "more stringent test" than a preponderance of evidence). Put differently, "if the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (citations omitted); *United States v. Lopez-Diaz*, 794 F.3d 106, 111 (1st Cir. 2015) (a "reasonable jury must necessarily entertain a reasonable doubt" if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged"); *Cosby v. Jones*, 682 F.2d 1373, 1379 (11th Cir. 1982) (if evidence establishes only "that the defendant is more likely than not guilty then the evidence is not sufficient for conviction").

II. **Facts Taken in Which All Conflicting Inferences Favor the Government.**

Evidence presented at trial has established an elaborate fraud scheme in which victims were convinced by scammers to wire money from their own bank accounts under the guise of investing in cryptocurrency. Specifically, fraudsters contacted

5

victims on social networking apps and by random telephone calls, established online communications with the fraud victim, and developed what appeared to be friendly relationships.

Marisol Mejia, for example, testified that she met a person who called himself "Daniel" on a Facebook dating application. "Daniel" suggested that Ms. Mejia invest money in a cryptocurrency platform, and Ms. Mejia made a series of wire transfers from her account to recipients identified to her by the cryptocurrency platform. One of the three wire transfers made by Ms. Mejia was sent to a Chase business bank account, x3886, that had been opened by Hailong Zhu.

"Daniel" also told Ms. Mejia not to list the reason for the wire transfer on the bank form. According to Ms. Mejia, she "trusted Daniel. [She] thought he was saying the truth, and that's why [she] made the transfers" from her account. Sept. 5 Tr., Testimony of Marisol Mejia.

Testimony from Kwadwo Danso-Fordjour was similar to Ms. Mejia's. Contacted by a random telephone call, Mr. Danso-Fordjour struck up a relationship with a person who called herself "Rachel." Rachel suggested that Mr. Danso-Fordjour invest in cryptocurrency, and he agreed to do so. At "Rachel's" urging, Mr. Danso-Fordjour obtained a personal loan from SoFi bank for $15,000, and wired the proceeds of the loan to a recipient identified by the cryptocurrency trading platform. Of the seven wires sent by Mr. Danso-Fordjour, one $5000 wire was sent to a Bank of America business account, x9529, that was opened by Hailong Zhu. Like Ms. Mejia, Mr. Danso-Fordjour testified that he was "deceived by this person who called herself

Rachel . . . [a]nd that's why [he] sent money from [his] own account" to the recipients listed on the wire transfer forms. Sep. 6, 2023 Tr., Testimony of Kwadwo Danso-Fordjour.

Evidence also established that Hailong Zhu registered two companies in California and opened numerous bank accounts in the name of Sea Dragon Trading and Sea Dragon Remodeling. He also knew that large amounts of money were being deposited in these accounts, and made in person visits to deposit, withdraw, and wire money.

## ARGUMENT

### III. A Judgment of Acquittal Should be Entered Because the Government Failed to Adduce Any Evidence of a Scheme to Commit Bank Fraud.

The government has presented three theories of bank fraud. The first is that inducing victims to send their money from their bank accounts constitutes bank fraud. The second is that inducing victims to take out personal loans which would then be turned over to the fraudsters constitutes bank fraud. And the third is that depositing and moving the criminal proceeds of fraud coupled with false statements to banks constitutes bank fraud. None of these are legally viable.

#### A. The Cryptocurrency Fraud Scheme Is Not A Scheme to Commit Bank Fraud

"[U]nder established case law, the fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio v. United States*, 578 U.S. 282, 287 (2016) (citation omitted). If the evidence fails to establish an

7

agreement to engage in conduct that would satisfy the elements of the charged object, the Court must grant a judgement of acquittal. *Cf. United States v. Elbaz*, 52 F.4th 593, 611 (4th Cir. 2022) ("[A]n agreement to commit a non-criminal object is no conspiracy offense at all.").

To prove a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344(2) and § 1349, the government must adduce evidence proving a conspiratorial scheme by which the defendant or a co-conspirator's "false statement is the mechanism naturally inducing a bank ... to part with money in its control." *Loughrin v. United States*, 573 U.S. 351, 363 (2014). Accordingly, schemes to violate § 1344(2) "draw[] a line at frauds that have some real connection to a federally insured bank—namely, frauds in which a false statement will naturally reach such a bank[.]" *Id.* at 365 n.8 (language about lies to bank custodian omitted).

However, a "swindle" in which a *fraud victim* is induced to "give a check to [a] fraudster has nothing to do with the bank that will cash it . . . The bank's involvement in the scheme is, indeed, wholly fortuitous---a function of the victim's paying the fraudster by (valid) check rather than cash." *Id.* at 364 (emphasis added). Depositors and account holders, in other words, are not custodians of bank property. Frauds that induce such victims to turn over their money may violate other fraud statute, but such schemes do not constitute *bank* fraud. *See United States v. Blackmon*, 839 F.2d 900, 905 n.4 (2d Cir. 1988) (it is "difficult to conceive of any way in which an *authorized, nonfraudulent* withdrawal from a bank by one person could constitute a fraudulent obtainment from a bank by another person.") (emphasis in orig.). As

*Loughrin* makes clear, inducing a victim to wire money based on lies that induce the victim to do so does not constitute a scheme to violate § 1344(2). 573 U.S. at 363.

The fact that a fraud victim may have obtained bank loans, the proceeds of which they then turned over to the fraudsters, does not transform the scheme into one to commit bank fraud. That's because (1) no lies were told to banks to obtain the loans; and (2) once the loan proceeds were issued by banks based on valid loan applications, that money no longer was "bank property."

"As a matter of basic principles, loan proceeds do not remain the property of the lender." *United States v. Kristofic*, 847 F.2d 1295, 1296–97 (7th Cir. 1988); *accord Marcus, Santoro & Kozak, P.C. v. Hung-Lin Wu*, 274 Va. 743, 751, 652 S.E.2d 777, 781 (2007) (citation omitted) ("A debt involves a merely personal obligation to make payment of a sum of money to another. A creditor as such has merely a personal claim against the debtor. He can enforce his claim by judicial proceedings to reach the debtor's property and subject it to the satisfaction of his claim, but until he does so he has no legal or equitable interest in the property of his debtor."); *cf. Spaulding v. Wells Fargo Bank*, N.A., 714 F.3d 769, 778 (4th Cir. 2013) ("It is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'") (citations omitted, discussing Maryland law). For this reason, banks have no claim for conversion against borrowers, because an action for conversion requires a property interest in the loan proceeds given to the borrower. *See, e.g., In re Schupbach*, 500 B.R. 22, 33 (Bankr. D. Kan. 2013) (citing *Maneval v. Davis (In re Davis)*, 155 B.R.

123, 131 (Bankr. E.D.Va. 1993) ("When delivered, [loan proceeds] ceased to be Bank's property. Debtors cannot be liable to Bank for converting property in which Bank had no interest.").

Furthermore, the personal loan at issue here between a bank and a private individual is entirely different from the circumstances of *United States v. Chittenden*, 848 F.3d 188, 201 (4th Cir. 2017), vacated on other grounds, 138 S. Ct. 447 (2017). In that case, the defendants submitted fraudulent loan documents to a bank's subsidiary, a mortgage company that funded loans based on an existing line of credit from its parent bank. *Id.* at 200-01. In that case, there was "a close and direct relationship between the means (submitting fraudulent loan applications to bank's subsidiary) and the ends (receiving bank property when bank supplies funds for loans through line of credit with its subsidiary)." *Id.* at 201. *Chittenden* does not support the expansion of the bank fraud statute to misrepresentations made to private individuals who decide to take out a loan from a bank as a result.

### B. Lies to California Banks to Open Accounts or About the Ultimate Destination of Wire Transfers Is Not a Scheme To Commit Bank Fraud

To conspire to commit bank fraud in violation of 18 U.S.C. § 1344(2), one must agree to a scheme designed to "obtain" bank money or property. To "obtain" means gain or attain possession. *United States v. Montgomery Cnty., Md.*, 761 F.2d 998, 1001 n.10 (4th Cir. 1985) (citing Webster's Third New International Dictionary, p. 1559). And bank money or property means a cognizable "property interest" in the sense of the fraud statutes. *United States v. Colton*, 231 F.3d 890, 907 (4th Cir. 2000) (citing *McNally v. United States*, 483 U.S. 350, 358 (1987)).

10

Pursuant to the Uniform Commercial Code, an account holder has lawful ability to possess the equivalent of the money deposited into an account by virtue of being the account holder. *See* Cal. Com. Code § 4215 ("[A] deposit of money becomes available for withdrawal as of right at the opening of the bank's next banking day after receipt of the deposit."). In other words, a "bank's right to use those funds is subject always to its obligation to the accountholder to return the funds upon request." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302–03 (11th Cir. 2020). Furthermore, "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1162 (N.D. Cal. 2020) (citing *Casey v. U.S. Bank Nat'l Association*, 127 Cal. App. 4th 1138, 1149, 26 Cal.Rptr.3d 401 (2005)).

As such, merely opening an account with false information does not constitute a scheme to commit bank fraud. The Fourth Circuit held as much in *United States v. Orr*, 932 F.2d 330, 332 (4th Cir. 1991). In *Orr*, two defendants were charged with bank fraud for negotiating bad checks on an account opened by one of the defendants under a fake name using a fake driver's license. 932 F.2d at 331. The Fourth Circuit ruled that the bank fraud statute does not encompass passing bad checks drawn on accounts with insufficient funds. *Id.* at 332. However, the government also argued that "federal prosecution [was] authorized in this case, the bad check being drawn on a bank account in the name of Eugene Rogers when in fact the account in that name was opened by Eugene Elkins[.]" *Id.*

11

The Fourth Circuit rejected this argument because the misrepresentation in opening the account was not material to the alleged fraud: "Whether the account was in the name of Rogers, or Elkins, was not of significance to the giving of checks payable to certain payees and the return of such checks for reasons of insufficient funds." *Id.* Indeed, even though the account was opened under a false name, in Orr "the defendant [was] an authorized signatory" on the checks, and the "checks at issue in Orr bore an authorized signature." *United States v. Brandon*, 298 F.3d 307, 314 (4th Cir. 2002). In other words, to the extent the defendants in Orr were able to "obtain" funds from the account, they could do so based on the authority of "an authorized signatory" on the account rather than through a false statement that induced the bank to release funds that were not otherwise releasable to that person. Banks must release funds to account holders, whether the account holder has given their true name to the bank or not.

> To be sure, it may be true that
>
> false representations made by [Mr. Zhu] in establishing the account[s in California] were done in order to get the proceeds of the [fraud scheme] from the bank. So there is a sense in which the bank was "defrauded" of the amount that [Mr. Zhu] withdrew from the account. But it is not the sense of the bank fraud statute, the purpose of which is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions.

*United States v. Davis*, 989 F.2d 244, 246–47 (7th Cir. 1993); *accord United States v. Braeger*, 2023 WL 2136722, at *6 (E.D. Wis. Feb. 21, 2023) (relying on *Loughrin* to dismiss bank fraud counts based on false statements in opening business account

12

because "Section 1344(2) is not concerned with fraud in opening an account; it requires a false statement inducing a bank to release funds").

Similarly, merely depriving a bank of information about the ultimate destination of a money transfer, even potentially valuable or important information by which the bank makes decisions, is not sufficient to constitute bank fraud. *See Ciminelli v. United States*, 143 S. Ct. 1121, 1127 (2023) ("The right-to-control theory cannot be squared with the text of the federal fraud statutes, which are "limited in scope to the protection of property rights."); *United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021) ("There is no cognizable property interest in 'the ethereal right to accurate information.' ... Rather, 'the scheme must be one to deceive the bank and deprive it of something of value.'").

Once money was deposited into his accounts in California, Mr. Zhu's movement of that money does not constitute a scheme to commit bank fraud because the money had already been "obtained" for purposes of the bank fraud statute, and the alleged conspirators did not thereby agree to deprive the bank of any cognizable property right.

IV. **A Judgment of Acquittal Should be Entered Because the Government Failed to Adduce Any Evidence of Mr. Zhu's Knowing Agreement to Commit the Crypto Currency Fraud Scheme**

"[T]he essence of [a conspiracy] is an agreement to commit an unlawful act." *Iannelli v. United States*, 420 U.S. 770, 777 (1975). Consequently, to prove a conspiracy, "the government must show 'an agreement to commit an offense, [and]

willing participation by the defendant[.]" *United States v. McNeal*, 818 F.3d 141, 149 (4th Cir. 2016) (citation omitted).

But it is not sufficient for the government to prove merely that each conspirator had some unlawful objective in mind. In addition, the government must prove beyond a reasonable doubt that "the partners in the criminal plan [] agree[d] to pursue the *same* criminal objective." *Salinas v. United States*, 522 U.S. 52, 64 (1997) (emphasis added). Based on this principle, the Fourth Circuit vacated a RICO conspiracy conviction imposed on four defendants because they did not each agree to commit the same object offenses. *United States v. Pinson*, 860 F.3d 152, 162 (4th Cir. 2017) (holding that because the evidence established several criminal ventures rather than a single overarching conspiracy, "the cast of characters" did not have "the same criminal objective."). Likewise, this Court granted a Rule 29 judgment of acquittal in a case charging conspiracy to commit access device and wire fraud arising from the theft of credit cards from an amusement park because the evidence showed that the defendant only agreed to steal bags to obtain cash. *United States v. Johnson*, 149 F. Supp. 3d 678, 685 (E.D. Va. 2016) (Brinkema, J.) (holding that evidence established that, although he knew what others in the group planned to do with stolen credit cards, defendant agreed solely to participate for the purpose of stealing currency).

Accordingly, the evidence must establish beyond a reasonable doubt that Mr. Zhu knowingly agreed to a scheme to obtain funds or property under bank control by means of false statements. To survive this Rule 29 motion, therefore, evidence must exist that would establish to a reasonable jury, beyond a reasonable doubt, that Mr.

Zhu knowingly agreed to participate in the broad bank fraud conspiracy alleged in the superseding indictment. *See Pinson*, 860 F.3d at 162. But no such evidence of Mr. Zhu's knowing involvement in the charged conspiracy exists.

Indeed, the facts of this case, taken in the light most favorable to the government, are closely akin to those in *United States v. Rosenblatt*, 554 F.2d 36 (2d Cir. 1977). In that case, a defendant named Morris Brooks committed fraud at the post office where he worked and obtained eight checks worth over $180,000. But like the people who committed the cryptocurrency fraud in this case, Mr. Brooks did not want the money in those checks to be traceable to him. For this reason, Mr. Brooks asked Rabbi Elyakim G. Rosenblatt, the Dean of the Rabbinical College of Queens, to launder the checks through the college's bank account. Brooks did not tell Rabbi Rosenblatt that the checks were fraudulent. Instead, he told him the checks were valid, but he was trying to help the payees avoid taxes or conceal other wrongdoing. Based on this representation, Rabbi Rosenblatt deposited the checks into the college's account and then withdrew an equivalent amount of money to return to Brooks, minus a 10% fee for his services.

Both were subsequently indicted under 18 U.S.C. § 371 for conspiracy to defraud the United States. But Rosenblatt's conviction was vacated because he didn't know about Brooks' postal fraud. 554 F.2d at 37–38. As the Second Circuit explained, its "difficulty with Rosenblatt's conviction arises from the lack of any agreement between him and Brooks concerning the type of fraud in which they were engaged.... [Although] both men agreed to defraud the United States, [] neither agreed on the

type of fraud." *Id.* Since there was no agreement as to the particular fraud, the court vacated Rabbi Rosenblatt's conviction.

In this case, the evidence establishes that Mr. Zhu had no knowledge, no role, and is not charged with defrauding victims of money by deceiving them into investing in a cryptocurrency scam. Furthermore, any conclusion that Mr. Zhu knew about the cryptocurrency scheme "is speculative and leaves us with no more than a suspicion of guilt." *United States v. Stroupe*, 538 F.2d 1063, 1066 (4th Cir. 1976) (vacating conviction for insufficient evidence). Accordingly, just as in *Pinson, Johnson*, and *Rosenblatt*, the government has failed to present evidence of Mr. Zhu's knowing agreement with others to the "same criminal objective," *Salinas*, 522 U.S. at 64, as charged in the superseding indictment.

## V. A Judgment of Acquittal Should be Entered Because the Government Failed to Adduce Any Evidence That Mr. Zhu Knowingly Agreed to Any Conspiracy With Venue in the Eastern District of Virginia.

As noted in the pretrial briefing regarding the charge of conspiracy to commit money laundering, two constitutional provisions guarantee that trials occur only in the place where the charged crime occurred. U.S. Const. Art. III, § 2 cl. 3; Amend. 6; *accord* Fed. R. Crim. P. 18 ("[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). These provisions limit venue "to the place of the essential *conduct* elements of the offense." *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000) (emphasis in original); *United States v. Villarini*, 238 F.3d 530, 533-34 (4th Cir. 2001)

("Venue on a count is proper only in a district in which an essential conduct element of the offense took place.").

The "conduct elements" for purposes of conspiracy offenses occur "'wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires,' which may include a place where 'the defendant has never set foot.'" *United States v. Ojedokun*, 16 F.4th 1091, 1107 (4th Cir. 2021). An overt act is "an act to effect the object of the conspiracy." *Joplin Mercantile Co. v. United States*, 236 U.S. 531, 536 (1915). Finally, "[i]t is settled that, in a criminal case, venue must be narrowly construed." *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012).

In this case, no evidence establishes that Mr. Zhu knowingly agreed to participate in a conspiracy in which either the agreement itself or an overt act in furtherance of the agreement occurred in the Eastern District of Virginia. First, as discussed above, no evidence establishes Mr. Zhu's knowing involvement in the scheme to obtain money from victims under the guise of obtaining investments in cryptocurrency. Second, all of the conduct related to the California banking evidence occurred in California, and none of it occurred in the Eastern District of Virginia.

Therefore even if the Court concluded that the government's evidence regarding the opening of bank accounts in California and the international wire transfers constituted a scheme to commit bank fraud, any agreement or overt act related to that scheme did not occur in the Eastern District of Virginia. As such, the Court should grant a judgement of acquittal because the evidence fails to establish venue in this District. *See United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012)

(vacating, for failure to establish venue, wire-fraud conviction where there was no proof that an "essential conduct element"–the charged wire transmission–began or concluded in, or traveled through, the Eastern District of Virginia).

## CONCLUSION

Because the government has presented insufficient evidence that Mr. Zhu conspired to commit bank fraud in the Eastern District of Virginia, we respectfully request that the Court to grant his motion for a judgment of acquittal.

Respectfully submitted,

Hailong Zhu,
Defendant

By: /s/ Geremy Kamens
Federal Public Defender
Va. Bar No. 41596
Nate Wenstrup
Assistant Federal Public Defender
Va. Bar No. 96324
Office of the Federal Public Defender
1650 King St, Suite 500
Alexandria, VA 22314
Phone: (703) 600-0848
Fax: (703) 600-0880
Email: geremy_kamens@fd.org

Angus Fei Ni
AFN Law PLLC
Admitted *Pro Hac Vice*
504 2d Ave., 14th Floor
Seattle, Washington
Phone: (773) 543-3223
Email: angus@afnlegal.com