```
 1                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3      UNITED STATES OF AMERICA,        :
                                         :
 4                  Plaintiff,           :   Criminal Action
                                         :   No. 1:23-cr-00081
 5            v.                         :
                                         :
 6      HAILONG ZHU,                     :   September 7, 2023
                                         :   2:23 p.m.
 7                                       :
                    Defendant.           :   EXCERPT
 8                                       :
        ........................... :
 9
                    TRANSCRIPT OF RULE 29 MOTION
10         BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
                    UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
       For the United States:      UNITED STATES ATTORNEY'S OFFICE
13                                  Alexandra Zoe Bedell, AUSA
                                    Stephanie Schwartz, AUSA
14                                  2100 Jamieson Avenue
                                    Alexandria, VA 22314
15
       For the Defendant:          OFFICE OF THE FEDERAL PUBLIC
16                                  DEFENDER
                                    Geremy Kamens, Federal Defender
17                                  Nathaniel Wenstrup, AFPD
                                    1650 King Street, Suite 500
18                                  Alexandria, VA 22314

19                                  AFN LAW PLLC
                                    Angus Fei Ni, Esquire
20                                  504 2nd Ave
                                    14th Floor
21                                  Seattle, WA 98104

22     Also Present:               Mandarin Interpreters:
                                    Judith Shapiro
23                                  Renee Wang

24

25     (Continued)
```

1   (Continued)

2   Court Reporter:             Diane Salters, B.S., CSR, RPR, RCR
                                   Official Court Reporter

3                                     United States District Court
                                   401 Courthouse Square

4                                   Alexandria, VA 22314
                                   Email: Dianesalters.edva@gmail.com

5                                   Telephone: (301) 338-8033

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings reported by machine shorthand.   Transcript produced by
   computer-aided transcription.

*Proceedings*

1      (This portion of the jury trial proceedings commenced

2  at 2:23 p.m.)

3      THE COURT:  Does the defendant have a motion?

4      MR. KAMENS:  We do, Your Honor.  I've submitted a

5  written motion, and I would like to speak briefly on it.

6      Rule 29 requires the Court to enter a judgment of

7  acquittal if the evidence would not permit a rational jury to

8  find guilt as to every element of the charged offense beyond a

9  reasonable doubt.  By definition, if the evidence would permit

10 only a preponderance of the evidence with respect to all of the

11 elements, that is not a sufficient basis upon which to rule for

12 the government on a Rule 29.

13      I would like to speak about three elements that the

14 government has to prove beyond a reasonable doubt:  First,

15 knowledge of the object fraud; second, agreement to commit the

16 same crime as coconspirators; and, third, the object proved must

17 satisfy the elements of a scheme to commit bank fraud.

18      With respect to knowledge of the fraud scheme, there is

19 no evidence in this trial that Mr. Hailong Zhu had any contact

20 with the fraudulent platforms that were used to accept

21 investments from victims.  He had no communications with victims.

22 He had no communications about contacts with victims with other

23 conspirators.  There are no emails of bank information to be

24 shared with victims from him.  There's no admission that he knew

25 where the money came from.  This is not a money laundering case

*Proceedings*

1    in which willful blindness as to the unlawfulness of proceeds is

2    a sufficient basis to find that the defendant has engaged in that

3    prohibited conduct.  This is a conspiracy to commit bank fraud in

4    which the government must prove not only that Mr. Zhu knew about

5    the object fraud, but that he agreed to participate in it.  In

6    this case, there is simply no evidence that Mr. Hailong Zhu knew

7    anything about the scheme to obtain money from the victims.  For

8    that reason, the Court should grant the Rule 29.

9           A similar point is with respect to the requirement that

10   the government prove that Hailong Zhu agreed to commit the same

11   crime as his coconspirators.  It is certainly true that the Court

12   must consider the evidence at this stage on this motion in the

13   light most favorable to the government.  In considering the facts

14   in that respect, the Court has certainly heard evidence that

15   Mr. Zhu was involved in the opening of bank accounts based on

16   companies that, in fact, had no business; that large amounts of

17   money were deposited in those accounts; and that he made

18   substantial withdrawals and helped to transfer that money, but

19   none of that shows that he agreed to the fraud scheme engaged in

20   by the individuals who stole money from victims.  It is not

21   enough for Hailong to agree to help them commit some crime.  In

22   other words, it is not enough if he believed he was committing

23   money laundering if the others have agreed or are trying to

24   commit another crime, the charged crime, which is conspiracy to

25   commit bank fraud.  They must show that Hailong agreed to that

*Proceedings*

1    same conspiracy to commit bank fraud, and there is nothing in

2    this trial to show that he was a partner in that scheme to steal

3    money from victims.  The last --

4        THE COURT:  I'm having trouble following that final --

5    maybe it's the way you're saying it, but the conspiracy is not to

6    steal money from victims.  That would be wire fraud.  The

7    conspiracy is to commit bank fraud, to obtain the property of

8    banks; and we've had tons of briefing on this issue, and I'll

9    hear from the government in a second, but I'm a little confused

10   with your language.

11       MR. KAMENS:  Let me be more clear with respect to what

12   I'm specifically referring to, and that is the line of cases,

13   starting with *Rosenblatt* from the Second Circuit in which one

14   defendant engaged in fraud and obtained some fraudulent checks,

15   and then obtained the help of his rabbi, Rosenblatt, to launder

16   the proceeds of that fraud, but the rabbi who laundered the funds

17   didn't know anything about the actual fraud that had produced the

18   money.  They were both charged with the conspiracy to defraud the

19   United States.

20       THE COURT:  Well, in that case, the rabbi thought that

21   it was about evading taxes --

22       MR. KAMENS:  Correct.

23       THE COURT:  -- and so there was a question about what

24   the object of the conspiracy was.

25       MR. KAMENS:  Correct.

*Proceedings*

1          THE COURT:  So, here, there aren't multiple objects.

2     The government has elected to pursue solely bank fraud, so the

3     question is, is there sufficient evidence in the record, taken in

4     the light most favorable to the government, that there was an

5     agreement between the defendant and others to commit the crime of

6     bank fraud, to obtain bank property or property under the control

7     and custody of the bank?  So how do you respond to that argument?

8          MR. KAMENS:  That argument is based on the fact that we

9     have a difference of -- we differ on what bank fraud is, that is,

10    that bank fraud is not money laundering.  It is not engaging in

11    bank transactions with the proceeds of criminal conduct.  It is

12    not engaging in fraud that also happens to involve a bank

13    account.  It is lying to a bank to get the bank to release money

14    that is the bank's property or the property of another person's

15    account.  It is not what Mr. Zhu did, which is open up bank

16    accounts, and the proceeds of anterior criminal conduct was

17    funneled through those accounts.  That is not bank fraud.

18         THE COURT:  Well, it doesn't matter what Mr. Zhu did.

19    It matters what the object of the conspiracy was --

20         MR. KAMENS:  Absolutely.

21         THE COURT:  -- what the coconspirators did; and what

22    the coconspirators did would be attributable to Mr. Zhu even if

23    he didn't do it himself or even if he wasn't directly aware of

24    it.

25         MR. KAMENS:  The precondition for attributing the

*Proceedings*

1    conduct of coconspirators to Mr. Zhu is his knowledge and

2    agreement to what they're doing; that is, simply because Mr. Zhu

3    agrees to help them engage in money laundering is not the same

4    thing as conspiring with them to commit bank fraud.  So the point

5    of the argument is that there's nothing in this trial, no

6    evidence, to show that Mr. Zhu ever knew the source of the funds

7    going into the accounts.  That is a necessary precondition to

8    finding him guilty of conspiring to commit bank fraud.

9           Does the Court follow my argument, or am I not being

10   clear enough?

11          THE COURT:  No, I follow your argument.

12          MR. KAMENS:  The last argument is that this is not a

13   bank fraud scheme that the government has proved.  The simple

14   test for bank fraud with respect to the victims that testified in

15   this case is, Did Marisol Chavez and did Kwadwo Danso-Fordjour

16   authorize the wires that they sent?  If so, that's not bank

17   fraud.  Bank fraud does not encompass frauds to have people write

18   checks or wire money or otherwise send monies to scammers.  Banks

19   can't prevent people from doing foolish things with their money.

20   The fact that these individuals decided, even if they were

21   deceived by scammers, to send their own money, to wire their

22   money, that is not bank fraud.  Bank fraud requires a lie to the

23   bank that causes the bank to release the money, and it is

24   different than lying to a victim to get the victim to send money

25   to the scammer.  It's a very straightforward and simple argument,

*Proceedings*

1   and it's been accepted by a number of courts.  What the

2   government has here -- essentially, everything that the

3   government has presented -- is a fraud scheme that does not

4   constitute bank fraud.  The one thing they pointed to is efforts

5   to get victims to take out personal loans, and that also, in this

6   case, is not evidence of bank fraud.  Loan proceeds, once they're

7   disbursed to the borrower are no longer property of the bank.

8   And if the fraudster obtains money that has been disbursed to the

9   borrower by the bank pursuant to a personal loan, that, again, is

10   not bank fraud because they are not stealing bank property.

11          The language here is difficult to parse because when

12   we're talking about bank property, it's easy to think it's just

13   money in a bank account, that that's bank property; but the thing

14   is it doesn't encompass -- that is, specifically, bank fraud does

15   not encompass -- anything involving a bank account that is

16   connected to a crime.  It requires, specifically, lies to a bank

17   to get the bank to release its money or someone else's money;

18   like, for example, a mortgage loan application that has a lie.

19   That is material.  That would be something that would cause the

20   bank to give its own money based on a lie.  That is bank fraud.

21          Another clear example -- it's the one talked about by

22   Scott Golladay -- is a $100,000 fraudulent check.  The bank

23   doesn't know it's fraudulent; deposits it into a customer's

24   account; and within one business day, because of the UCC, the

25   bank has to give that money or make it available for withdrawal

*Proceedings*

1    to the customer.  The customer takes out the money, $100,000, and

2    the bank learns three days later the check is fraudulent.  The

3    customer no longer has the money.  The bank has to write off that

4    loss.  That is bank fraud.  It's a lie in the form of that

5    fraudulent check to the bank to get the bank to release funds.

6         What we have here is a scheme to get individuals to go

7    on cryptocurrency spoofed platforms and then decide to wire their

8    own money to the scammers.  That is not bank fraud.  That is

9    specifically what *Loughrin*, the Supreme Court case, says is not

10   bank fraud, a scammer who gets a valid check or a valid form of

11   payment from the victim; and that's why it's that simple test I

12   propose here:  Is the money that was provided by Marisol Chavez

13   and Kwadwo Danso-Fordjour, are those valid wires?  And they are

14   because they were authorized by those individuals.  It is fraud;

15   there's no doubt about that; it's just not bank fraud.

16        THE COURT:  Thank you.

17        MS. BEDELL:  Your Honor, the standard here is whether,

18   after reviewing the evidence in the light most favorable to the

19   prosecution, any rational trier of fact could have found the

20   essential elements of the crime beyond a reasonable doubt.  The

21   government gets the benefit of all reasonable inferences from the

22   facts proven to those sought to be established, and the jury, not

23   the reviewing court, weighs the credibility of the evidence and

24   resolves any conflict of the evidence presented.

25        So in this case, Your Honor, I think there is ample

*Proceedings*

1    evidence to support a conviction for bank fraud -- a conspiracy

2    to commit bank fraud here.

3           I would like to start with what the defendant agreed

4    to.  And so -- and I do want to be clear:  We are not saying that

5    his lies in opening accounts constitutes bank fraud in and of

6    themselves, but they certainly demonstrate a willingness to lie

7    to banks, and that is a critical part of the intent that needs to

8    be proven.

9           Additionally, the defendant himself actually did engage

10   in acts of bank fraud by directly lying to banks in order to

11   obtain money from them.  So a very clear example is the

12   transaction that happened on December 10th when he attempted to

13   withdraw just short of $75,000 from his personal Bank of America

14   account that had been -- the transfer from Robert Kessler on

15   December 9th.  And in this transaction, when he attempted to

16   withdraw the money, he told the bank that this was money that he

17   had received from a remodeling contract.  And we heard evidence

18   that, in fact, Mr. Kessler lived in Alaska and he had reported

19   being a victim; he submitted a hold harmless request; that money

20   was returned to him.  So those were very clearly not remodeling

21   funds.

22          THE COURT:  But how are they the funds of the bank?  In

23   other words --

24          MS. BEDELL:  So, Your Honor --

25          THE COURT:  You're absolutely right that the Court will

*Proceedings*

1    take, and must take, the facts in the light most favorable to the

2    government, but explain to me what facts there support a false

3    statement to the bank to obtain the bank's property.

4         MS. BEDELL:  So, Your Honor, the statute requires that

5    you can either be trying to obtain the property of the bank or

6    property in the custody of the bank.  So as an initial matter,

7    this falls most easily under property in the custody of the bank.

8         THE COURT:  But is there any case that you've shown me

9    that supports that theory?  Because that theory, it strikes me,

10   would mean that all customers' funds in the bank are under the

11   custody of the bank.  That's the whole nature of having your

12   money in the bank, right?  You don't have it physically; the bank

13   has it, but it's your money.  So if the bank fraud statute were

14   intended to cover that, it would mean all accountholders' funds

15   would be subject to bank fraud if somebody was trying to get the

16   accountholders' money.  But isn't that the essence of all the

17   other fraud statutes you could have brought, including wire

18   fraud, which is trying to get a customer's money, not the bank's

19   money?

20        MS. BEDELL:  No, Your Honor.  This is very much bank

21   fraud because it is making misrepresentations to the bank in

22   order to get money out of the bank's custody.  And so it has to

23   be material.  So I think maybe the point you're getting at is if

24   I, like, you know -- I think Mr. Kamens had made an example of I

25   say it's for my bills, but, really, it's my golf tee time.  The

*Proceedings*

1    bank is not going to care about that.  But we heard ample

2    evidence about why this was a material misrepresentation and how

3    banks are trying to determine whether these withdrawals are

4    legitimate, and using this information for that purpose --

5             THE COURT:  You mean because of the anti-money

6    laundering laws and bank secrecy laws, that they have an

7    obligation to look into why certain money is coming and going?

8    Is that what you're talking about?

9             MS. BEDELL:  It's not just their obligation, but the

10   fact that they do it, Your Honor, and that they are evaluating

11   this information and using it in making decisions about whether

12   to release the money.

13            THE COURT:  But it's not their money, is it?

14            MS. BEDELL:  Your Honor, it does not have to be their

15   money, but I will put a pin in that and say *U.S. v. Shaw* does say

16   that banks have an interest in accounts that -- in funds in an

17   account.  They do have a property interest there.

18            And the other thing, Your Honor, is that it's also

19   not -- I think this is the other point, is that you had said:  It

20   is my money I'm trying to get out of the account.  And maybe in

21   some instances if you're trying to withdraw from your own

22   account, but the fact is that this wasn't Mr. Zhu's money.  It

23   was sent to him under fraudulent pretext.  And the law is also

24   very clear that you don't have an unfettered right to money that

25   you've gotten through fraud and theft.  So the idea that the UCC

*Proceedings*

1   applies and that he can just pull this money out because it's in

2   his bank account, that's, first of all, not a reflection of the

3   reality.  We saw numerous instances where the defendant and his

4   coconspirators were not able to access the money that was in

5   their bank accounts, and that's because they don't have an

6   absolute right to it.

7           THE COURT:  All right.  I guess I'm focused on trying

8   to understand what the government's theory is.  Is it that

9   because the banks have the ability to freeze, either restrict or

10  suspend and then close an account, that that gave them control

11  over the accounts; and, therefore, any lies connected with trying

12  to get that money released constitute bank fraud?

13          MS. BEDELL:  Yes, Your Honor.

14          THE COURT:  Is that your theory?

15          MS. BEDELL:  It constitutes efforts in this case to

16  obtain the funds from the custody of the bank, and those were

17  lies directly made to the bank here.  So we're not even dealing

18  with the situation of it going through an intermediate person;

19  and that's where the cases are much more hesitant and are trying

20  to -- you know, my fake purse that I think is real, that's not

21  bank fraud because there's no direct con- -- there's no direct

22  relationship between the misrepresentation and the bank.  But,

23  here, this is -- the plain text of the statute is that it can be

24  money in the custody of the bank, and it has to be

25  misrepresentations.  And, again, I think Mr. Kamens and I

14

1  disagree about whether the misrepresentations have to go to the

2  bank, but in this case, they absolutely have.  And so that is

3  100 percent classic bank fraud.  And I think Mr. Kamens has

4  argued that because it's already in his bank account, you're not

5  obtaining it, but the reality is very different.  As we said, we

6  saw numerous instances where they were not able to get the money

7  out of the account.  And to think that the goal of the conspiracy

8  was to say, Let's just get the money into Hailong Zhu's account,

9  mission accomplished, we're done here, that was clearly not the

10  goal or the purpose of the conspiracy.  The goal was to continue

11  moving it on.  And so that's why we saw all of those transfers

12  sending the money overseas, and it's why we saw the

13  coconspirators -- Mr. Wong, Small 7, Nikki -- going to great

14  lengths to try to get this money out of these accounts after

15  they've been restricted and continue moving them on.  This was a

16  massive focus of the conspiracy, and it involved

17  misrepresentations by Mr. Zhu and his conspirators at nearly

18  every step, and that's why it constitutes bank fraud, Your Honor.

19       THE COURT:  All right.  Are there any other cases other

20  than *United States v. Shaw* that address this issue of the custody

21  and control in the government's theory?

22       MS. BEDELL:  I'm sure.  I will be honest, Your Honor, I

23  had not really thought -- it's the plain text of the statute, so

24  that it does say in the statute that it is efforts to obtain

25  money from the custody of a bank.  So I have not looked for

1    specific case law that would support that point because I hadn't

2    understood Mr. Kamens to be arguing that.  So I think I would

3    have to go do additional research for that specific -- I'm

4    certainly not saying there aren't cases.  I just don't

5    necessarily have them at my fingertips right now.  Frankly, some

6    of the cases that we have looked at and discussed probably do

7    cover this, and I would just need a minute to -- or more than a

8    minute -- but I would need to go through that.  That's just not

9    something that I had been totally aware was at issue given that

10   it is the plain text of the statute.

11          THE COURT:  And tell me again how you distinguish

12   between that theory of custody and control and bank fraud then

13   applying to every effort to make a false statement to obtain the

14   money that's already in accountholders' accounts.

15          MS. BEDELL:  Well, Your Honor, it seems like you're

16   concerned about situations where just an ordinary bank customer

17   is trying to get money out, and so I'm struggling to understand

18   exactly what this hypothetical looks like, but I do keep coming

19   back to materiality here because it is very difficult for me to

20   imagine what the sort of general misrepresentation that, you

21   know, me as a law-abiding citizen is going to make to my bank in

22   trying to get money out.  So, you know, I would -- like an ATM

23   transaction is not necessarily automatically bank fraud if it

24   doesn't involve a misrepresentation; and then, again, it has to

25   be a material misrepresentation.  So that, to me, it strikes me

*Proceedings*

1    as a limiting factor, is that I'm not sort of seeing cases where

2    we are charging or considering or trying to protect against

3    someone paying their tea time rather than paying their bills or

4    something like that.  I don't think that that would fall into the

5    category of material.

6                THE COURT:  Anything else?

7                MS. BEDELL:  Yes, Your Honor.  I would like to address

8    the loan aspect of the conspiracy, but if that's something

9    that -- if that's helpful, because we do believe -- actually, we

10   do believe both the efforts to obtain loans absolutely constitute

11   bank fraud; and, there, we do see misrepresentations going to the

12   bank.  We looked at Exhibit 1-4 where Mr. Danso-Fordjour

13   represented that he was not taking out the loan for the purpose

14   of investment, which was exactly what he believed he was taking

15   out the loan for.  And then, also, this is very -- as an

16   identical case to *Chittenden*, wherein, there, there was no

17   misrepresentation that went directly to the bank, but,

18   nonetheless, the misrepresentations induced the victims -- excuse

19   me -- induced the intermediary to take out a loan that was

20   immediately transferred, and that was a direct and close

21   connection.  And that's exactly what happened here.  I mean,

22   there's absolutely no basis for any of these people taking out a

23   loan other than being induced.

24                The other part of that -- and Mr. Kamens has tried to

25   present this as a third conspiracy -- but the efforts to get the

*Proceedings*

1    money from the victims that wasn't bank loans.  First of all,

2    that's an integral part of this conspiracy.  It's not like

3    there's any victim, whether we were allowed to put their

4    testimony on or not, that out of nowhere, someone said, You

5    should take out a loan.  This is all part of the same effort.

6    But, in addition, those non-loan transfers that they made also

7    frequently involved misrepresentations.  We heard

8    Mr. Danso-Fordjour testify that he invented reasons for sending,

9    in the "purpose"; and we saw in Exhibit 3-3, which was a text

10   between Marisol and Daniel, You don't need to worry that the bank

11   will refuse you because you can tell the bank that it is your

12   friend.  Basically, you don't have to tell the bank the real

13   purpose of the transfer; tell them something else and the

14   transaction will go through.  And we saw numerous transactions

15   that were labeled "construction," home goods -- that's not an

16   exact one -- but it was construction, payment for supplies,

17   things that were very clearly not the actual purpose of these

18   payments.  And we heard testimony from Mr. Campbell and

19   Mr. Golladay that these representations are material.  So we

20   absolutely believe that that is also -- and we think the evidence

21   supports -- that that is also bank fraud.

22          And then to the final point that -- maybe not the

23   final, but one other point that Mr. Kamens made here is those

24   cases -- and I think you picked up on this, Your Honor -- but the

25   *Rosenblatt* cases have found that you have to have agreed to

*Proceedings*

1    commit the same offense; and everyone here is committing bank

2    fraud, and this is an integrated and coordinated conspiracy to

3    get the money out of victims and the banks into the intermediary

4    accounts and overseas.  And everyone at all the different

5    stages -- they may be committing other crimes, too, which happens

6    frequently -- but they are definitely committing bank fraud.  And

7    the law is very clear that once Mr. Zhu has agreed to commit bank

8    fraud, he does not have to know the details of the scheme; he

9    does not have to know every participant; he does not have to know

10   every act.  And, in fact, in *United States v. Mora*, the Fourth

11   Circuit specifically says he does not need to know the

12   organization of the scheme.

13          In Rosenblatt -- and there's a whole line of cases --

14   those are all instances where, as you pointed out, one person was

15   committing tax evasion, in his mind, and the other was committing

16   some sort of fraud.  But, here, everyone has agreed to commit

17   bank fraud.  So that is what we have to prove, and that is what

18   the evidence supports here, Your Honor.

19          THE COURT:  Anything else?

20          MS. BEDELL:  Not unless there are other questions, Your

21   Honor.

22          THE COURT:  Thank you.

23          MR. KAMENS:  May I respond briefly?

24          THE COURT:  Yes.

25          MR. KAMENS:  Your Honor, banks put in place provisions

*Proceedings*

1    to protect their customers.  So if I go to a bank and say I'd

2    like to withdraw my money, and I'm really intending to invest in

3    cryptocurrency, the bank may say, That's not a good idea; we're

4    not going to let you do that.  But it's my money.  If I say,

5    then, Well, actually, I'm going to put it under my mattress, and

6    they give me the money, I can do whatever I want with it.  It is

7    my money.  The fact that I'm invading those internal controls to

8    protect the customer is not bank fraud.

9           The government's theory that they've just announced is

10    a theory that the bank fraud statute is a criminal banking

11    statute; that drug dealers who deposit money in banks commit bank

12    fraud when they withdraw money or move it and don't tell the bank

13    that they're actually drug dealers.  That is not bank fraud.  The

14    government's argument also makes bank fraud never-ending.  We

15    have argued about this.  We've cited that --

16           THE COURT:  Well, how do you respond to the argument

17    about the custody and control?  There seems to be a fundamental

18    difference over the view of what "custody and control" means.

19    And so if a bank doesn't have a property interest, generally, in

20    the money that its accountholders put there, but has certain

21    obligations and can take certain actions when, for example, they

22    think there's fraud going on or they think that they might end up

23    being liable, so that they have to restrict an account or suspend

24    it, does that not fall under the definition of bank fraud?

25           MR. KAMENS:  It doesn't if the action is authorized by

1   the accountholder.  So banks have a property interest in the

2   money that they have in their accounts, but that property

3   interest is always subsumed to the interest of the accountholder,

4   so that the two --

5          THE COURT:  Well, in this case, the accountholder is

6   alleged to have been perpetrating a fraud.

7          MR. KAMENS:  Absolutely, but that comes down to whether

8   people who engage in criminal conduct and deposit proceeds from

9   criminal conduct in banks, whether that constitutes bank fraud,

10  and it doesn't.

11         Let me explain the response in two ways:  One, it comes

12  down to, What is the occasion by which a person obtains someone

13  else's property?  Bank fraud is committed when you obtain the

14  property of the victim.  It is not when individuals engage in

15  money laundering or transactions with the proceeds of that crime.

16  That is not the occasion by which they obtain the money from the

17  victim.  Every wire fraud, bank fraud, mail fraud statute is

18  about obtaining property from the victim; and this case, it has

19  always seemed has been about the fraud that was perpetrated on

20  these victims.  But now the government has completely changed

21  what they're saying, and they're saying, essentially, that the

22  movement of those proceeds without telling the bank about what

23  this was actually about constitutes bank fraud.  And there's not

24  a single case that supports that theory.  We have argued about

25  it.  We've cited the Seventh Circuit case -- I think it's called

*Proceedings*

1    *Anderson* -- which says that the reason you can't call this a

2    fraud every time they move the money is because that would make

3    the fraud never-ending as long as the defendants have that money

4    and move it around.

5          The fraud occurs when it's stolen from the victim, not

6    when they're moving money between accounts.  And so, again, the

7    Court's question to the government was very apt, and that is, Is

8    there any case that supports the theory that the bank fraud

9    statute completely subsumes money laundering, it encompasses

10   depositing proceeds of a crime, and then trying to get that money

11   to another account?  There isn't a case that says that.  Instead,

12   what bank fraud or wire fraud or mail fraud is is stealing money

13   from a victim.  Everything that happens after the money is

14   obtained from the victim is not the fraud itself.  It may be

15   other crimes.  It may well be money laundering, which is exactly

16   what the conduct that has been alleged in this case or presented,

17   the evidence, with respect to Mr. Zhu would establish in the

18   light most favorable to the government, but that is not bank

19   fraud.  Otherwise, essentially, bank fraud is everything

20   involving the deposit of money from the criminal activity.

21          THE COURT:  Do you wish to be heard?

22          MS. BEDELL:  Briefly, Your Honor.

23          THE COURT:  All right.

24          MS. BEDELL:  Again, bank fraud is everything if you

25   omit all the other elements.  And, again, there's plenty of ways

*Proceedings*

1    to commit money laundering that don't involve bank fraud, but

2    when you are lying and making material misrepresentations to the

3    bank, that is the critical defining element here that

4    distinguishes it from just trying to conceal your money.

5            And, again, I think we've debated *Anderson* extensively,

6    but *Anderson* stands for the fact -- the specific facts of that

7    case, to be clear, the money had been at rest for ten years.

8    Though she made another transfer that the court determined

9    completely unrelated to the fraud and the scheme that was at

10   issue in that fraud, they concluded that transfer was not bank

11   fraud; and that seems entirely reasonable given the particular

12   facts of that case, but it is nothing to say about whether that

13   can never -- a transfer between accounts can never be bank fraud.

14           And then, Your Honor, we would ask you to delay ruling

15   until after the jury has returned a verdict.  I will put that on

16   the record.  Thank you, Your Honor.

17           THE COURT:  Thank you.

18           Well, these issues are not being raised for the first

19   time.  They've been raised throughout this case, from the first

20   indictment, to the superseding indictment, to the motion to

21   dismiss, to the motion *in limine*, and now to the Rule 29.  I

22   appreciate the efforts of counsel to educate the Court.  I

23   appreciate the submission of the written motion for judgment of

24   acquittal.

25           I will say that it is a difficult position to be in

1    because the government doesn't have the opportunity to submit a

2    full written position; but as I said, there is plenty of evidence

3    and law in the record based on the submission of both sides.

4          I'm going to take a brief recess and then we will

5    reconvene.  Court will be in recess.

6          (Whereupon, a recess in the proceedings occurred from

7    2:55 p.m. until 3:21 p.m.)

8          MR. KAMENS:  Your Honor, can I make one small point

9    that I forgot to make?

10          THE COURT:  All right.

11          MR. KAMENS:  This is in our written pleading, but with

12   respect to the government's custody and control theory, all of

13   the conduct -- the agreements, the misrepresentations they point

14   to -- happened in California.  If that conduct, which is

15   equivalent to money laundering, is the basis for the government's

16   custody and control bank fraud theory, it is just as subject to

17   the dismissal the Court already entered in this case with respect

18   to the money laundering charge.

19          THE COURT:  Thank you.

20          This matter comes before the Court on Defendant's

21   motion for judgment of acquittal pursuant to Rule 29, and the

22   Court must determine whether, viewed in the light most favorable

23   to the prosecution, there's substantial evidence to support a

24   guilty verdict in this case.  Substantial evidence is evidence

25   that's sufficient for a reasonable juror to find proof beyond a

1    reasonable doubt of each element of the charged offense.

2            The indictment, the superseding indictment, charges one

3    count of conspiracy to commit bank fraud.  It does not charge

4    multiple-object conspiracy; it does not charge conspiracy to

5    commit money laundering, or conspiracy to commit wire fraud.  The

6    elements of conspiracy to commit bank fraud are as follows:  Two

7    or more persons agree to commit bank fraud; the defendant

8    willfully joined the conspiracy with the intent to further its

9    unlawful purpose.  Bank fraud, which was the object of the

10   alleged conspiracy, has three elements:  First, that the

11   defendant knowingly executed or attempted to execute a scheme or

12   artifice to obtain any monies, funds, credits, assets, or other

13   property owned by or under the custody or control of a financial

14   institution by means of material false or fraudulent pretenses,

15   representations, or promises; two, the defendant did so with the

16   intent to defraud; and, three, the financial institution was then

17   federally insured.  Now, there's no dispute that the banks in

18   this case that have been identified were federally insured; and,

19   really, there's no dispute that there was a scheme to defraud.

20   The cryptocurrency scheme was a wide-ranging and clear effort to

21   obtain money through false pretenses.  However, there is no

22   evidence, even in the light most favorable to the government,

23   that the defendant knew of the cryptocurrency scheme; that he

24   knew of the websites or the platforms that were used; that he

25   knew of Daniel or Rachel or the others who posed as friends or

1    others who lured the victims of that scheme; or that he even knew

2    the source of the money that came into his accounts.  There's no

3    evidence that Joseph Wong or Nikki or Little 7 ever explained or

4    shared the purpose or means of the conspiracy to the defendant,

5    that it was to defraud victims of their money.  More

6    specifically, there's no evidence that there was a meeting of the

7    minds as to the object of the conspiracy that the defendant is

8    charged with, even taking the evidence in the light most

9    favorable to the government.  There's simply nothing in the

10   record that there was an agreement to defraud banks of their

11   property or property under their custody and control.

12          *Loughrin* makes clear, as do many other cases, including

13   the *Davis* case, that not every false statement or lie to a bank

14   is bank fraud, and not every effort to get victims to part with

15   their money is bank fraud, even if a bank is involved.  Here,

16   there's no evidence that the money from the victims of the

17   cryptocurrency scheme involved the bank's property or put the

18   bank at risk in any way or implicated property under the control

19   of a financial institution.  The acts to restrict or suspend the

20   accounts after the fraudulent scheme had obtained the funds

21   cannot support a bank fraud theory.  And, in fact, there's no

22   evidence that Ms. Chavez, for example, ever got a loan.  She used

23   her own money and wired it as part of the fraud; and

24   Mr. Danso-Fordjour, likewise, used his own money, for the most

25   part, with the exception of the one loan that he sought from SoFi

*Proceedings*

1    Bank, but his statements to the bank, even taking that in the

2    light most favorable to the government, cannot support a theory

3    of bank fraud here.  They're simply too attenuated to be

4    attributed to the defendant in this case.

5            Now, the Court has no doubt that the government has

6    established many crimes were committed by the codefendants in

7    this case.  There's no doubt as well that the defendant here was

8    taken advantage of in many ways by the codefendants, as

9    recognized by the agents themselves.  Whether the defendant is

10   guilty of other crimes not charged in this indictment is not for

11   the Court to say and not before the Court, but the Court finds

12   that, pursuant to Rule 29, there's insufficient evidence to let

13   this case go forward and go to the jury; and, accordingly, the

14   motion for judgment of acquittal is granted.  And I don't do that

15   lightly, and I appreciate the efforts that all counsel have

16   devoted to this case, but there's simply no way for the Court to

17   reach another decision, and so this matter is dismissed pursuant

18   to Rule 29.

19           I will bring in the jury and advise them that the

20   matter has been resolved and that they are discharged from

21   further responsibilities in this case.

22           (This portion of the jury trial proceedings concluded

23   at 3:28 p.m.)

24

25                  *       *       *       *       *

1                    CERTIFICATE OF REPORTER

2            I, Diane Salters, hereby certify that the foregoing

3    transcript is a true and accurate record of the stenographic

4    proceedings in this matter.

5

6                                      /s/ Diane Salters

7                              _____

8                              Diane Salters, CSR, RCR, RPR
                               Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25